## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **National Railroad Passenger Corporation**<br>60 Massachusetts Avenue, N.E.<br>Washington, DC 20002<br><br>Plaintiff,<br><br>**v.**<br><br>**Veolia Transportation Services, Inc.**<br>2015 Spring Road, #750<br>Oak Brook, IL 60523<br><br>and<br><br>**Veolia Transportation, Inc.**<br>2015 Spring Road, #750<br>Oak Brook, IL 60523<br><br>Defendants. | CIVIL ACTION NO. 1:07-cv-01263 |

## DEFENDANTS' MOTION TO DISMISS FOR
## FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Veolia Transportation Services, Inc. and Veolia Transportation, Inc. ("Veolia") respectfully move this Court for an order dismissing Plaintiff's complaint ("Complaint") on the following grounds:

1.     The Complaint fails to demonstrate that any of the alleged damages that National Railroad Passenger Corporation ("Amtrak") claims to have suffered were caused by Veolia. The facts alleged in the Complaint show that Amtrak would have lost its bid before the South Florida Regional Transportation Authority ("SFRTA") regardless of Veolia's alleged conduct. Having failed to protest the outcome of the bid in Florida, Amtrak may not now argue that it has been

harmed as a result of Veolia's or SFRTA's actions.  Amtrak's causation argument fails as a matter of law.

       2.      The Complaint fails to allege a cause of action for aiding and abetting a breach of fiduciary duty.  Amtrak has not identified any wrongful or improper act by Veolia recruiting at-will employees to help it compete.  Nor has Amtrak alleged how the three men that Veolia recruited violated any fiduciary duty when they exercised their basic right to seek better opportunities with a new employer.

       3.      The Complaint fails to allege a cause of action for tortious interference with economic advantage.  Amtrak fails to sufficiently allege that it had a valid business relationship with SFRTA.  Amtrak also fails to establish that Veolia was acting improperly or without justification when it listed the three men it recruited in its SFRTA bid application.

       4.      The claims in the Complaint are anticompetitive and contrary to public policy. The law favors free competition, and the clear implication from the Complaint is that Amtrak has a right to monopolize the talents and services of those who work for it.

WHEREFORE, Defendants pray that their motion to dismiss the Complaint with prejudice be granted.

Respectfully submitted this 9th day of August, 2007.

/s/ Thomas F. Cullen, Jr.

Thomas F. Cullen, Jr. (D.C. Bar No. 224733)
Thomas M. Henry
John M. Bradley
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Attorneys for Defendants*
*Veolia Transportation, Inc. and*
*Veolia Transportation Services, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **National Railroad Passenger Corporation**<br>60 Massachusetts Avenue, N.E.<br>Washington, DC 20002<br><br>Plaintiff,<br><br>v.<br><br>**Veolia Transportation Services, Inc.**<br>2015 Spring Road, #750<br>Oak Brook, IL 60523<br><br>and<br><br>**Veolia Transportation, Inc.**<br>2015 Spring Road, #750<br>Oak Brook, IL 60523<br><br>Defendants. | CIVIL ACTION NO. 1:07-cv-01263 |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

The Complaint filed by the National Railroad Passenger Corporation ("Amtrak") is directly contrary to two well-recognized and well-protected rights:  the right of a business to compete and the right of an employee to seek better opportunities in a new job.  Veolia Transportation Services, Inc. and Veolia Transportation, Inc. ("Veolia")[1] have a right to compete against Amtrak for business and for employees.  Employees, including those who work at Amtrak, have a protected right to better themselves by seeking new employment and new opportunities.  In some limited instances, an employer may limit these employee rights by

---

[1] In the Complaint, Amtrak refers to Veolia Transportation Services, Inc. and Veolia Transportation, Inc. collectively as "Veolia."  For ease of reference here, Defendants use the same convention.  Defendants note, however, that they are individual entities incorporated under the laws of different states, and their separate corporate status should not be ignored.

contract or to protect its own property.  Amtrak, however, has not alleged any such instances or exceptions.  It does not, for example, allege that anyone stole any trade secrets from Amtrak or misused any confidential information.  Nor does it allege that any of the employees had, much less breached, a contract with Amtrak or violated any covenant not to compete.

A brief summary of the material facts as alleged in the Complaint, but without pejorative gloss, is in order.  Veolia and Amtrak are competitors in the management of public rail systems.  A Florida public entity, the South Florida Regional Transportation Authority ("SFRTA"), sought bidders to run its commuter rail system and both companies bid.  This project constituted a new opportunity and a new customer for both bidders and was not an existing customer of either.  Bidders were required to list proposed management teams, and both did so.  The dispute centers on three men then working for Amtrak that Veolia listed as part of its proposed management team.  These men were working on various other jobs in the Amtrak system at the time -- Amtrak has, according to the Complaint, 19,000 employees -- and were employees at will without any enforceable legal expectation to be employed on or considered for the South Florida project or any new project.  Amtrak does not allege it had any right to insist that these men volunteer for this new project.  These men had gained qualifications and experience while working for Amtrak, but the Complaint does not allege that they had any trade secrets or protectable intellectual property relevant to the South Florida project.  Veolia approached these men and they agreed to be listed on the Veolia bid and serve as management for the project if Veolia won.  The public bid and assessment process, which is not challenged, focused on four (4) factors organized into a 100 point scoring system:  price, technical approach, operating plans and qualifications and experience.  There was a three-person commission in charge of the scoring, written decisions and evaluations and Veolia gained a score of 85 points to Amtrak's

62.3.  Of this 22.7 point difference, 0.7 points -- or roughly three percent -- was Veolia's edge in

qualifications and experience.  Amtrak has not challenged the award in Florida, nor does it

venture to attack here the integrity or the rationality of the Florida public process.

In the absence of any right to insist that these men become Amtrak employees on the new

project, or any preexisting rights to the SFRTA contract, or any special presumption of success

as a bidder on the South Florida project, Amtrak simply has no enforceable rights here and no

expectations with which Veolia could tortiously interfere.  Amtrak bid and lost, Veolia bid and

won.  Although the bid process and award are not challenged, and the employees' rights to move

on are not challenged, Veolia is attacked for giving Florida and these three men the benefits of

competition.  This is not a legal case.  It is a tantrum or an attempt to intimidate, or both, and

should be dismissed.

## ARGUMENT

A complaint must adequately state a claim for relief and must be supported by showing a

set of facts consistent with the allegations.  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969

(2007).  The allegations must raise a plaintiff's right to relief above the "speculative level."  *Id.*

at 1965.  When the plaintiff fails to adequately plead its theory, dismissal is warranted.  *See*

*Aktieselskabet AF 21 v. Fame Jeans, Inc.*, No. 06-585, 2007 WL 1655877, at *2 (D.D.C. 2007)

(granting defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) pursuant to *Twombly*).

## I.    AMTRAK HAS FAILED TO DEMONSTRATE THAT ANY ALLEGED DAMAGES WERE CAUSED BY VEOLIA.

In order to state a claim upon which relief may be granted, Amtrak must show

causation -- that Veolia's acts caused the damages that Amtrak claims to have suffered.  Amtrak

has not done so on either claim it has brought, offering only arguments that are clearly

inconsistent with the facts it has pleaded.

Amtrak's Complaint is much ado about 0.7 points. As noted above, on a scale of 100 points, Veolia beat Amtrak by a total score of 85 to 62.3 -- a difference of 22.7 points. (*Id.* ¶ 47.) The primary accusation leveled in the Complaint is that Veolia recruited three of Amtrak's then-current employees, which purportedly gave Veolia an unfair advantage in the category of qualifications and experience. According to the Complaint, "Qualifications and Experience was given the most weight in SFRTA's scoring system; it accounted for 35 percent of the proposal's total score." (*Id.* ¶ 44.) In this category, however, Veolia only beat Amtrak by a score of 28.0 to 27.3 -- a difference of just 0.7 points. (*Id.* ¶ 47.) Thus, even though Amtrak lost the bid by over 22 points, it argues that its 0.7 point loss in the "qualifications and experience" category caused it to lose the entire SFRTA bid. This argument is untenable on its face; a 0.7 point advantage could not have caused a 22.7 point loss. The Complaint is simply silent on the 22.0 point advantage Veolia was judged to have on the combination of price, technical approach and operating plans. If these are real advantages, and the Complaint offers us no reason to believe they are not, then the result stays the same -- Amtrak loses the bid. Amtrak's causation argument thus fails as a matter of law.

It is unclear how Amtrak proposes to pry open the Florida process in order to track causation. Are there to be depositions of the Florida commissioners? Will they be asked to contradict either the weighting of the factors or the written explanations of their thinking? This cannot be the case, in part because Amtrak cannot contradict here the SFRTA scoring system or challenge the tabulation of the bidders' scores. *See Nelson v. Lindsey*, 10 So. 2d 131,134 (Fla. 1942) (stating that courts will not review quasi legislative or executive decisions by administrative agencies where the agency violated no rule of law and the record shows no abuse

of delegated authority or unreasonable action).[2]  Nor can it seek to appeal SFRTA's decision at this late date.  The failure to file a protest with an administrative agency generally precludes a party from petitioning a court to enjoin the agency from awarding the contract at issue.  *See Dep't of General Services v. Willis*, 344 So. 2d 580, 590 (Fla. 1st Dist. Ct. App. 1977) (absent a showing that the Florida Administrative Procedures Act remedies are inadequate, the court will not entertain a suit to enjoin governmental action).  Amtrak could have filed a notice of protest to attempt to stop SFRTA from awarding the contract to Veolia, *see* Fla. Stat. Ann. § 120.57(3)(c) (West 2007), but needed to do so within 72 hours of the adverse decision or else suffer a waiver of proceedings.  *See* Fla. Stat. Ann. § 120.57(3)(b) (West 2007).  Amtrak knew of the three men's plans to change employers by no later than January 26, 2007, (Complaint ¶¶ 51, 52), and thus the deadline for Amtrak to challenge the SFRTA bid passed in late January 2007.  There is no allegation, however, that Amtrak ever filed a notice of protest or any other kind of appeal.  Having missed the deadline to protest the outcome, Amtrak may not now argue that it has been harmed as a result of Veolia's or SFRTA's actions during the bidding process.

## II.    AMTRAK HAS FAILED TO ALLEGE A CAUSE OF ACTION FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY.

The Complaint alleges that the three men have violated some fiduciary duty to Amtrak and that Veolia has aided and abetted this alleged breach.  Supposedly Veolia did something wrong in offering these men new opportunities and these men did something wrong in taking them.  To state a claim, Amtrak must find some employee duty to Amtrak and some Veolia duty to Amtrak.  The duty that Amtrak purports to find is a fiduciary duty that goes far beyond any obligation or reciprocal benefit to the employee.  One might call the idea feudal, but even feudal lords had legal obligations to their vassals.  Amtrak's novel expansion of fiduciary duty ignores

---

[2] The scoring system used by SFRTA follows the directive of the Florida Legislature.  *See* Fla. Stat. Ann. § 343.54(3)(i) (West 2007) (setting forth the considerations that the SFRTA shall consider in awarding a contract).

the fundamental rights of employees to look for better opportunities and a better job elsewhere, and of companies to recruit employees to better compete in the industry; they do not and cannot sufficiently state a claim for which relief may be granted.

### A.    Veolia has not committed any wrongful or improper act by recruiting at-will employees to help it compete.

Amtrak's fiduciary duty claim contradicts the well-recognized and firmly-established rule that there is nothing actionable about recruiting a competitor's employees, where those employees are at-will and not subject to non-compete agreements or other restrictive covenants. As Judge Learned Hand recognized nearly ninety years ago:

> "Nobody has ever thought, so far as we can find, that in the absence of some monopolistic purpose every one has not the right to offer better terms to another's employe[e], so long as the latter is free to leave. The result of the contrary would be intolerable, both to such employers as could use the employe[e] more effectively and to such employe[e]s as might receive added pay. It would put an end to any kind of competition."

*Triangle Film Corp. v. Artcraft Pictures Corp.*, 250 F. 981, 982-83 (2d Cir. 1918). Judge Hand noted that an argument to the contrary -- that a competitor may not offer "better terms" to an at-will employee -- is "so extraordinary a doctrine, that we do not feel called upon to consider it at large." *Id*. The same rule holds true today. "Competition in the marketplace encompasses competition in the labor market, including an employer's ability to solicit and hire the at-will employees of another and an at-will employee's ability to seek employment at better terms." *Schmersahl, Treloar & Co. v. McHugh*, 28 S.W.3d 345, 349 (Mo. Ct. App. 2000). The *McHugh* court further elaborated the policy behind the rule, stating that "[t]here is no wrong in making an offer of employment to an at-will employee, even though the employee and his new employer may compete with the former employer. The law's policy favors free competition when no agreement provides otherwise." *Id*. at 351 (citations omitted).

This rule has been recognized by both federal and state courts throughout the United States. *See, e.g., Kadco Contract Design Corp. v. Kelly Servs., Inc.*, 38 F. Supp. 2d 489, 494-95 (S.D. Tex. 1998) (recognizing that, under Texas law, a "third party's efforts to induce another to exercise his rights to dissolve an at-will contract does not constitute tortious interference with a contract"); *Taller & Cooper, Inc. v. Neptune Meter Co.*, 166 N.Y.S.2d 693, 700 (N.Y. Sup. Ct. 1957) (noting there is no legal basis for predicating "liability on the mere inducing of plaintiff's employees to leave its employ and to enter defendant['s] employ . . . .").

Amtrak does not dispute that the three men were at-will employees while working at Amtrak.  (*See* Complaint ¶¶ 22-26.)  There is no allegation of any contract between these men and Amtrak.  There is no allegation of any agreement not to compete with Amtrak or otherwise restricting these men's ability to work for a competitor on a new business venture.

Nor does Amtrak seriously argue, beyond conclusory allegations, that Veolia's actions in recruiting the three men were improper or tortious.  There is no allegation that Veolia induced these men to breach any contract or violate any restrictive covenant.  There is no allegation that the three men stole any trade secrets, or that Veolia prompted them to do so.  There is no allegation that Veolia had any fiduciary duty to Amtrak, much less violated such a duty.  Nor is there any allegation that Veolia's actions constitute unfair competition or a restraint of trade.  In short, Amtrak has done nothing to show why Veolia's engaging in the proper and well-accepted practice of recruiting at-will employees from a competitor is improper or gives rise to any cause of action.

**B.    The three men did not violate any duty to Amtrak.**

It is the basic right of an employee to seek better opportunities and a better job with another employer.  *See Flammer v. Patton*, 245 So. 2d 854, 857 (Fla. 1971) (the policy of the common law, which has been preserved in Florida law today, generally considers contract

provisions restraining or hindering a person's right to follow his calling as void against public policy).[3]  There are some limited restrictions that may be placed on that right, such as when an employee signs a non-compete agreement or is entrusted with a valuable customer list or other sensitive trade secrets.  These restrictions, which run counter to an employee's basic rights, are narrowly construed.  *See Gould & Lamb, LLC v. D'Alusio*, 949 So. 2d 1212, 1213 (Fla. 2d Dist. Ct. App. 2007) ("A party seeking to enforce a restrictive covenant such as a noncompete clause is required to 'plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant'") (quoting Fla. Stat. Ann. § 542.335(1)(b) (West 2007)); *see also Merrimack Valley Wood Prods., Inc. v. Near*, 876 A.2d 757, 762 (N.H. 2005) (stating that contracts in restraint of trade or competition are narrowly construed).

Such limited restrictions on the freedom of an employee to seek better opportunities need to be reciprocal or necessary to preserve some other right.  *See, e.g.*, *Flammer*, 245 So. 2d at 857 (finding that the common law has required mutuality and fairness to enforce non-competition provisions); *Merrimack Valley Wood Prods.*, 876 A.2d at 762 ("Covenants are valid only to the extent that they prevent employees from appropriating assets that are legitimately the employer's"); *Marine Contractors Co. v. Hurley*, 310 N.E.2d 915, 920 (Mass. 1974) (stating that employee covenants not to compete are enforceable only to the extent that they are necessary to protect a legitimate business interest such as trade secrets or other confidential information, but that protection of the employer from ordinary competition is not a legitimate business interest).

---

[3] The Complaint and public bid documents make clear that Mr. Salemme worked in Maine and Mr. Mauck worked in New Mexico.  *See* Complaint ¶¶ 24-26; *see also* Veolia Transportation Bid Proposal for South Florida Regional Transportation Authority RFP No. 06-112, at 50-52 (attached hereto as Ex. A) (Inclusion of this document is permissible in a motion to dismiss because it is central to and discussed throughout the Complaint.  *See* Complaint ¶¶ 18, 27-29, 31, 34, 36-37; *infra* note 4).  Accordingly, these individuals' common law obligations to their employer are governed by the laws of those two states which, consistent with the laws throughout the United States, should similarly find no fiduciary duty under the facts alleged here.

An at-will employee's fiduciary duty is confined to that individual's scope of employment. *See, e.g.*, *Productive Automated Systems Corp. v. CPI Systems, Inc.*, 61 F.3d 620, 622 (8th Cir. 1995) ("Nothing in . . . the general principles of agency law indicates that an agent's fiduciary obligations extend to matters not included in the agent's employment or contractual relationship.").  The fact is that while the new bid for the South Florida project may have been within the scope of Amtrak's business, it was not within the existing scope of any of the three men's employment or duties.  SFRTA was a brand new customer -- there are no allegations to the contrary -- with new requirements, procedures and obligations for the winning bidder and its management team.  Each man apparently would have been required to interview with Amtrak in order to be considered for a position in this new job.  (*See* Complaint ¶ 41.)  For two of these men, this new job would have required relocation to a different part of the country. As noted above, Amtrak has not alleged that any of these three men were subject to a non-compete agreement or other restrictive covenants, or that they misappropriated or misused any trade secrets or other sensitive information.  There is simply no way that these three men could have breached any of the duties within the scope of their employment by taking a new job with new duties for a new customer.  Amtrak has failed to sufficiently allege how these men violated any fiduciary duty to Amtrak by seeking better opportunities in a brand new job serving a brand new customer, or how Veolia acted improperly when offering these individuals employment on a new job.

## III.   AMTRAK HAS FAILED TO ALLEGE A CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE.

Amtrak accuses Veolia of tortiously interfering with the "economic advantage" it allegedly had with SFRTA.  The Complaint does not identify any facts that would actually

support such a claim.  Amtrak's relationship with SFRTA was far too tenuous to give rise to any

cause of action.  Moreover, Veolia's actions were proper and competitively justified.

### A.    Amtrak cannot establish that it had a business relationship with SFRTA.

Amtrak's alleged "valid business relationship or expectancy in the SFRTA Operations

Contract" is based entirely on its belief that it would have been awarded the contract if Veolia

had not listed the three men as part of its bid.  (Complaint ¶¶ 43-52, 61.)  This "expectancy" is

entirely too speculative.  Generally, an action for tortious interference with a business

relationship requires an actual understanding or agreement that "in all probability" would have

been completed but for defendant's interference.  *Ethan Allen, Inc. v. Georgetown Manor, Inc.*,

647 So. 2d 812, 815 (Fla. 1994); *accord Jay v. Mobley*, 783 So. 2d 297, 299 (Fla. 4th Dist. Ct.

App. 2001); *see also St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*, 784

So. 2d 500, 505 (Fla. 5th Dist. Ct. App. 2001) ("The speculative hope of future business is not

sufficient to sustain the tort.")

Amtrak does not, and cannot, show that its business relationship or expectancy with

SFRTA was anything other than uncertain and speculative.  It was a participant in a bidding

competition in which SFRTA could have rejected *any and all* of the bids.  (*See* Request for

Proposal No. 06-112, Florida Administrative Weekly, Vol. 32, No. 41, at 4894-95 (Oct. 12,

2006) (attached hereto as Ex. B) ("SFRTA reserves the right to postpone, accept, or reject any

and all proposals in whole or in part.").)[4]  Amtrak does not allege any contracts or other

agreements with SFRTA that would evidence a sufficient business relationship or expectancy.

Nor does Amtrak explain how the proposal it submitted to SFRTA, which needed to overcome a

---

[4] Even if not appended to the complaint, documents cited in the complaint and central to the claim can be considered as part of a Rule 12(b)(6) motion without converting the motion into one for Summary Judgment.  *Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 186 (D.D.C. 2001).  The Request for Proposal is cited by Plaintiff at ¶ 9 and discussed throughout.  *See* ¶¶ 9-19, 24, 31.

22-point deficit to beat Veolia, could have possibly ever won the bid.  Simply put, Amtrak was *competing* to win a bid, and had absolutely no reason to expect it would win.

Nevertheless, Amtrak asserts in the Complaint that it would have won the bidding process had Veolia not recruited its employees.  (*See, e.g.*, Complaint ¶ 58.)  Assertions or boasts that a party would have been the winner of a bid are often little more than speculation.  *See, e.g.*, *Lamminen v. City of Cloquet*, 987 F. Supp. 723, 732-33 (D. Minn. 1997), *aff'd*, 162 F.3d 1164 (8th Cir. 1998) ("Plaintiff has not established a genuine issue of fact . . . that in the absence of the wrongful act of Defendants, it is reasonably probable that Plaintiff would have been selected as the vendor to provide the decorations in 1994.  Plaintiff's assertion that he would have been the lowest bidder is pure speculation, for he provided absolutely no evidence to support such assertion").  Amtrak has failed to establish that it had any relationship with SFRTA sufficient to give rise to a tortious interference claim.

> **B.    Amtrak fails to establish that Veolia's acts were improper or unjustified.**

The Complaint states that it was improper for Veolia to list the three men in Veolia's bid proposal.  (*See, e.g.*, Complaint ¶¶ 21, 27-29.)  As with recruiting at-will employees, however, there is nothing improper or unlawful in recruiting personnel for a bid application.  The prevalence and legitimacy of this practice is clearly reflected in the numerous decisions recognizing it under federal procurement law.

In these decisions, the Comptroller General of the United States has acknowledged that it is neither unusual nor inherently improper for an awardee to recruit and hire personnel employed by an incumbent contractor or another competitor-bidder.  *See, e.g.*, *Logicon RDA*, B-252031, 93-2 CPD ¶ 179, 1993 WL 384833 (Comp. Gen. Sept. 20, 1993); *Applications Research Corp.*, B-230097, 88-1 CPD ¶ 499, 1988 WL 227169 (Comp. Gen. May 25, 1988); *Automated Servs., Inc.*, B-221906, 86-1 CPD ¶ 470, 1986 WL 63521 (Comp. Gen. May 19, 1986); *Gem Servs.,*

*Inc.*, B-217038, 85-1 CPD ¶ 159, 1985 WL 52298 (Comp. Gen. Feb. 7, 1985); *United HealthServ Inc.*, B-232640, 89-1 CPD ¶ 43, 1989 WL 240234, at *3 (Comp. Gen. Jan. 18, 1989) (stating that bidders are not precluded under procurement law from proposing to hire employees of competitor-bidders).  Courts have recognized the same reality.  *See Consol. Eng'g Servs., Inc. v. United States*, 64 Fed. Cl. 617, 634-35 (2005).  Amtrak fails to include any allegations to show why Veolia's listing of the three men on its bid application -- in keeping with this general rule and to further its own competitive interests -- somehow constitutes tortious interference.

## IV.    SUSTAINING THESE CLAIMS WOULD BE CONTRARY TO PUBLIC POLICY.

The clear implication of Amtrak's claim here is that it has a right to monopolize the talents and services of all those who work for it and, thus, to eliminate them from any opportunity where they might be useful to a competitor.  This claim is clearly anticompetitive; a regime of contracts that accomplished this purpose could not stand.

Amtrak alleges that experience and talent are critical factors in winning a bid to operate a railroad.  (*See, e.g.*, Complaint ¶¶ 13, 14, 19.)  It also alleges that it is the "industry leader," (*id.* ¶ 7), that "possesses an unmatched pool of experienced managers and other personnel," employing more than 19,000 people.  (*Id.* ¶ 8.)  The Complaint then accuses Veolia of improper and tortious conduct for attempting to recruit three men from this "unmatched pool" for a bid to operate a railroad.  In essence, Amtrak is arguing that:  (1) it has, by far, the best people for the job; (2) anyone seeking to compete with Amtrak will need to recruit at least some of its employees (*see, e.g.*, Complaint ¶ 30 ("[i]n fact, Veolia's ability to submit a qualifying proposal *at all* depended on staffing its Key Management Team with then-current Amtrak employees"); (3) but that it is improper and illegal for anyone to recruit these employees for new opportunities

and projects. The end result of this argument is that a company that seeks to compete with Amtrak on a public bid will be sued for tortious conduct.

This argument is contrary to public policy and the principles underlying free competition. As Judge Learned Hand stated in *Triangle Film*, a policy that holds that employees are not free to seek better opportunities at another job "would be intolerable" and "would put an end to any kind of competition." *Triangle Film Corp.*, 250 F. at 982-83. *See also Orkin Exterminating Co. v. Martin Co.*, 242 S.E.2d 135, 138-39 (Ga. 1978) ("Overly-restrictive covenants in employment contracts or other similar considerations which place a restraint upon the free movement of employees in the marketplace as opportunity, experience and competition permits is contrary to this court's view of fair competition"); *McHugh*, 28 S.W.3d at 349 ("There is no wrong in making an offer of employment to an at-will employee, even though the employee and his new employer may compete with the former employer. The law's policy favors free competition when no agreement provides otherwise") (citation omitted). Amtrak should not be allowed to profit from a Complaint that runs counter to free competition and public policy.

## CONCLUSION

For the foregoing reasons, Veolia respectfully requests that the Complaint be dismissed with prejudice for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted this 9th day of August, 2007.

/s/ Thomas F. Cullen, Jr.

Thomas F. Cullen, Jr. (D.C. Bar No. 224733)
Thomas M. Henry
John M. Bradley
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Attorneys for Defendants*
*Veolia Transportation, Inc. and*
*Veolia Transportation Services, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **National Railroad Passenger Corporation**<br>60 Massachusetts Avenue, N.E.<br>Washington, DC  20002 )<br><br>Plaintiff, )<br><br>v. )<br><br>**Veolia Transportation Services, Inc.**<br>2015 Spring Road, #750<br>Oak Brook, IL  60523 )<br><br>and )<br><br>**Veolia Transportation, Inc.**<br>2015 Spring Road, #750<br>Oak Brook, IL  60523 )<br><br>Defendants. ) | CIVIL ACTION NO. 1:07-cv-01263 |

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted and Memorandum in Support were served upon Plaintiff's counsel electronically using the Court's Electronic Case Filing System, pursuant to Local Rule 5.4, and via first class mail on this 9th day of August 2007.


/s/ Thomas M. Henry

Gary A. Orseck, Esq.
Matthew R. Segal, Esq.
ROBBINS, RUSSELL, ENGLERT,
ORSECK & UNTEREINER, LLP
1801 K St., NW, Suite 411-L
Washington, D.C.  20006

# Exhibit A

South Florida Regional Transportation Authority
RFP No. 06-112



---

## VICTOR SALEMME

**PROFESSIONAL EXPERIENCE:**

| | |
|---|---|
| 1998–Present | **Assistant Superintendent, Downeaster Passenger Service (ME)** |
| 1996–1998 | **Superintendent of Special Projects, New England Division** |
| 1995–1996 | **Trainmaster, Shoreline East Commuter Railroad (CT)** |
| 1993–1995 | **Trainmaster, MBTA North/South Commuter Rail (MA)** |
| 1991–1993 | **Engine Road Foreman, MBTA North/South Rail** |
| 1990–1993 | **Transportation Manager, New England Division** |
| 1988–1990 | **Assistant Transportation Manager, MBTA** |
| 1987–1988 | **Operations Supervisor, MBTA North/South Rail** |
| | Amtrak |
| | |
| 1985–1987 | **Chief Train Dispatcher** |
| 1979–1985 | **Train Dispatcher** |
| 1977–1979 | **Tower Director** |
| | Boston and Maine Railroad |
| | |
| 1964–1968 | **United States Marine Corps** |

**QUALIFICATIONS:**

- Managing various state commuter rail operations.
- Protecting carrier/agency operating agreements.
- Ensuring operations, accessibility and security.
- Training and managing Dispatchers, Engineers and Conductors.
- Establishing schedules and operations in five-minute tolerance.
- Working with agreement-protected and unprotected employees in the same environment.

**TRAINING:**

- Conductor revenue and remitting policies.
- Qualified by Northeast Operating Rules Advisory Committee.
- Certified locomotive and MW-1000 track engineer.
- Drug and alcohol programs and charging officer training.
- AMT-3 and advanced air brake.

**EDUCATION:**

- Pennsylvania State University – Project Management.
- Georgetown University – Project Management.
- Northeastern University – Criminal Justice.
- Wentworth University – Project Development and Blueprinting.
- United States Marine Corps – GED.

---

South Florida Regional Transportation Authority
RFP No. 06-112



---

**GARY MAUCK**

---

**PROFESSIONAL EXPERIENCE:**

| | |
|---|---|
| 2005–Present | **District Manager – Station Operations, Southwest**<br>Amtrak                                          Albuquerque, NM |

- Ensuring compliance with station policies.
- Managing personnel with respect to customer service.
- Interfacing with city and state commuter service departments during the Rail Runner service startup and operations.

| | |
|---|---|
| 2002–2005 | **Manager – Crew Base Operations**<br>Amtrak                                          Miami, FL |

- Performed administrative duties related to on-board staffing, personnel, budget and safety policies and procedures.
- Developed programs, guidelines and strategic goals to ensure adequate staffing levels.
- Coordinated with crew management and national operations center to schedule employees and allocate resources for daily operations as well as to respond to service interruptions.

| | |
|---|---|
| 2000–2002 | **Superintendent – Terminal Services**<br>Amtrak                                          Miami, FL |

- Responsible for Hialeah mechanical facility and material control operations.
- Led development, direction and implementation of daily rail equipment maintenance activities to ensure safety, reliability and cleanliness.
- Established expected rolling stock availability and on-time performance measurements and communicated them to division managers and national operations center.

| | |
|---|---|
| 1995–2000 | **Manager – Material Control and Commissary**<br>Amtrak                                          Miami, FL |

- Responsible for daily operation of material control sites and commissary operations in the State of Florida.
- Managed purchasing, receiving, warehousing and issuing of company material.
- Ensured compliance with Food and Drug Administration, Occupational Safety and Health Administration, Hazmat and inventory accountability policies and procedures.

South Florida Regional Transportation Authority
RFP No. 06-112



| 1989–1995 | **District Manager** |
| | Amtrak | Miami, FL |

- Responsible for customer service and administrative activities performed by Florida stations, Miami and Tampa crew bases and commissaries.
- Led implementation of programs to provide standards for timely response to customer needs.

| 1973–1989 | **General Supervisor – On-Board Service and Commissary** |
| | Amtrak | Miami, FL |

- Managed daily activities related to on-board staffing and customer service.
- Ensured consistent and professional provision of services.

**EDUCATION:**

- Florida International University – Bachelor of Science.
- Miami-Dade Junior College – Associate of Science.

# Exhibit B

*Florida Administrative Weekly*                    *Volume 32, Number 41, October 13, 2006*

ADA improvements; egress improvements; window replacement; bathroom renovations; and grease trap replacement.

Applications are to be sent to: Duval County Public Schools
Facilities Design and
Construction
1701 Prudential Drive
5th Floor
Jacksonville, FL 32207-8182

PROJECT MANAGER:     Kris Eskelin
PHONE NO.:           (904)390-2279
RESPONSE DUE DATE:   November 7, 2006, and will be accepted until 4:30 p.m.
MBE GOALS:           15% Overall

Information on the selection process can be found at www.educationalcentral.org/facilities under Selection Booklets.

Applicants are advised that all plans, drawings and specifications for this project may be reused by the Owner as a prototype for future projects in the District.

## BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND

Notices for the Board of Trustees of the Internal Improvement Trust Fund between December 28, 2001 and June 30, 2006, go to http://www.dep.state.fl.us/ under the link or button titled "Official Notices."

## STATE BOARD OF ADMINISTRATION

### INVITATION TO NEGOTIATE

The Florida Prepaid College Board is accepting proposals in response to an Invitation to Negotiate, ITN #06-01, to obtain proposals from firms qualified to provide Value-Oriented Large Capitalization Domestic Equity Investment Manager Services for the Florida Prepaid College Plan and the Florida College Savings Plan.

Copies of the Invitation to Negotiate, ITN #06-01, are available on or after October 16, 2006, by submitting a written request to: Thomas J. Wallace, Executive Director, Florida Prepaid College Board, 1801 Hermitage Blvd., Suite 210, Tallahassee, Florida 32308, facsimile number (850)488-3555. All information received in regard to this ITN must be sent to the above named address.

There is no bidder's conference. Only written inquiries concerning the ITN will be accepted. No written inquiries will be accepted after 5:00 p.m., Eastern Time, October 27, 2006. The original unbound copy and five (5) copies of each response to the ITN must be received by 12:00 Noon, Eastern Time, November 17, 2006, at: Florida Prepaid College Board,

1801 Hermitage Blvd., Suite 210, Tallahassee, Florida 32308. Proposals must be submitted in full accordance with the requirements and mandatory criteria of the ITN.

The Board reserves the right to reject any and all proposals or accept minor irregularities in the best interest of the State. Certified Minority Business Enterprises are encouraged to participate.

SPECIAL ACCOMMODATION: Any person requiring special accommodations at the bid opening because of a disability should fax a written request for same to Thomas J. Wallace, Executive Director, Florida Prepaid College Board, at (850)488-3555, no later than five (5) days prior to the bid opening.

## REGIONAL TRANSPORTATION AUTHORITIES

### REQUEST FOR PROPOSAL NO. 06-112
### COMMUTER RAIL OPERATIONS
### FOR SFRTA'S COMMUTER RAIL SYSTEM

The South Florida Regional Transportation Authority (SFRTA), an agency of the State of Florida, operates Tri-Rail, a seventy-two (72) mile commuter railroad with eighteen (18) stations in Miami-Dade, Broward, and Palm Beach Counties.

THE PURPOSE of this Request for Proposal (RFP) is to enter into an Agreement with a qualified Contractor to provide Operator Services for SFRTA's Tri-Rail Commuter Rail System. At commencement of the Agreement service is projected to consist of forty-eight (48) weekday, sixteen (16) Saturday and fourteen (14) Sunday and Holiday revenue trains. The selected Contractor shall be required to work closely with SFRTA's Rail Fleet Maintenance contractor to ensure a reliable, efficient and safe passenger revenue train service for SFRTA's Tri-Rail System. The term of the Agreement will be seven (7) years with one (1) three (3) year option period.

A REQUEST FOR DOCUMENTS should be directed to Mr. Robert Becker at SFRTA, 800 N. W. 33 Street, Suite 100, Pompano Beach, Florida 33064, (954)788-7909. The cost of the solicitation document is One Hundred Dollars ($100.00) non-refundable. Checks or money orders made payable to SFRTA should be forwarded to Mr. Becker at the address above. Solicitation documents will be available on or about October 9, 2006.

A PRE-PROPOSAL CONFERENCE will be held in the SFRTA Board Room at the address above on October 18, 2006 at 10:00 a.m. The purpose of the meeting will be for SFRTA to respond to questions from document holders and clarify requirements in an open forum. Attendance is not mandatory but is recommended.

RECEIPT OF SEALED PROPOSALS: All proposals must be received as per the RFP instructions no later than 5:00 p.m. Eastern Time on November 17, 2006 at the SFRTA office in Pompano Beach.

SFRTA reserves the right to postpone, accept, or reject any and all proposals in whole or in part. All Proposers must certify that they are not on the State of Florida Comptroller General's List of Ineligible Bidders. All proposals shall remain in effect for One Hundred Eighty (180) days from the RFP submission due date.

DBE PARTICIPATION: SFRTA solicits and encourages Disadvantaged Business Enterprise (DBE) participation. DBEs will be afforded full consideration of their responses and will not be subject to discrimination. SFRTA's DBE program goal is 10% of total contract expenditures.

NOTIFICATION OF FEDERAL PARTICIPATION: A portion of this project is funded by a grant from the Federal Transit Administration. Any resultant Agreement shall be subject to all federal rules and regulations.

CONE OF SILENCE: Any verbal or written communications between any Proposer (potential or actual), or its representatives and any SFRTA Board Member, staff member, committee member, or consultant regarding this procurement are strictly prohibited from the date of the RFP advertisement through the date of execution of the contract. The only exceptions to this are: (1) written requests regarding information or clarification made to SFRTA's designated contract specialist during the allowable time period under the solicitation; (2) any communications at a publicly noticed meeting of SFRTA; and (3) any communications with the SFRTA Director of Procurement. Any violation of the requirements set forth in this section shall constitute grounds for immediate and permanent disqualification of the Proposer/violator from participation in this procurement.

Christopher C. Bross, CPPO, FCPM

Director, Procurement

---

REQUEST FOR PROPOSAL NO. 06-113
COMMUTER RAIL FLEET MAINTENANCE
FOR SFRTA'S COMMUTER RAIL SYSTEM

The South Florida Regional Transportation Authority (SFRTA), an agency of the State of Florida, operates Tri-Rail, a seventy-two (72) mile commuter railroad with eighteen (18) stations in Miami-Dade, Broward, and Palm Beach Counties.

THE PURPOSE of this Request for Proposal (RFP) is to enter into an Agreement with a qualified Contractor to provide locomotive, passenger coach and cab car maintenance to SFRTA's rolling stock fleet and facility maintenance for portions of the Hialeah Yard Maintenance Facility and the West Palm Beach Layover Facility. The selected Contractor shall be required to work closely with SFRTA's Operations Contractor to ensure a reliable, efficient and safe passenger revenue train service for SFRTA's Tri-Rail System. The term of the Agreement will be seven (7) years with one (1) three (3) year option period.

A REQUEST FOR DOCUMENTS should be directed to Mr. Robert Becker at SFRTA, 800 N. W. 33 Street, Suite 100, Pompano Beach, Florida 33064, (954)788-7909. The cost of the solicitation document is One Hundred Dollars ($100.00) non-refundable. Checks or money orders made payable to SFRTA should be forwarded to Mr. Becker at the address above. Solicitation documents will be available on or about October 9, 2006.

A PRE-PROPOSAL CONFERENCE will be held in SFRTA offices at the Hialeah Train Yard located at 9400 N. W. 37th Avenue, Miami, FL 33147, on October 19, 2006 at 10:00 a.m. The purpose of the meeting will be for SFRTA to respond to questions from document holders and clarify requirements in an open forum. Attendance is not mandatory but is recommended.

RECEIPT OF SEALED PROPOSALS: All proposals must be received as per the RFP instructions no later than 5:00 p.m. Eastern Time on November 21, 2006 at the SFRTA office in Pompano Beach.

SFRTA reserves the right to postpone, accept, or reject any and all proposals in whole or in part. All Proposers must certify that they are not on the State of Florida Comptroller General's List of Ineligible Bidders. All proposals shall remain in effect for One Hundred Eighty (180) days from the RFP submission due date.

DBE PARTICIPATION: SFRTA solicits and encourages Disadvantaged Business Enterprise (DBE) participation. DBEs will be afforded full consideration of their responses and will not be subject to discrimination. SFRTA's DBE program goal is 10% of total contract expenditures.

NOTIFICATION OF FEDERAL PARTICIPATION: A portion of this project is funded by a grant from the Federal Transit Administration. Any resultant Agreement shall be subject to all federal rules and regulations.

CONE OF SILENCE: Any verbal or written communications between any Proposer (potential or actual), or its representatives and any SFRTA Board Member, staff member, committee member, or consultant regarding this procurement are strictly prohibited from the date of the RFP advertisement through the date of execution of the contract. The only exceptions to this are: (1) written requests regarding information or clarification made to SFRTA's designated contract specialist during the allowable time period under the solicitation; (2) any communications at a publicly noticed meeting of SFRTA; and (3) any communications with the SFRTA Director of Procurement. Any violation of the requirements set forth in this section shall constitute grounds for immediate and permanent disqualification of the Proposer/violator from participation in this procurement.

Christopher C. Bross, CPPO, FCPM

Director, Procurement

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **National Railroad Passenger Corporation**<br>60 Massachusetts Avenue, N.E.<br>Washington, DC  20002<br><br>Plaintiff,<br><br>v.<br><br>**Veolia Transportation Services, Inc.**<br>2015 Spring Road, #750<br>Oak Brook, IL  60523<br><br>and<br><br>**Veolia Transportation, Inc.**<br>2015 Spring Road, #750<br>Oak Brook, IL  60523<br><br>Defendants. | )<br>)<br>)<br>)<br>)        CIVIL ACTION NO. 1:07-cv-01263<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

Upon the Motion of Defendants Veolia Transportation Services, Inc. and Veolia Transportation, Inc. ("Veolia") to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, and for good cause shown, it is hereby ORDERED that Veolia's motion be GRANTED and that Plaintiff National Railroad Passenger Corporation's Complaint be dismissed with prejudice in its entirety.

IT IS SO ORDERED:

_____
Judge Reggie B. Walton