## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————
                                                  )
National Railroad Passenger Corp.,                )
                                                  )
                    Plaintiff,                    )
                                                  )
          v.                                      )        Civil Action No. 07:1263 (RBW)
                                                  )
Veolia Transportation Services, Inc.,             )
          *et al.*,                               )
                                                  )
                    Defendants.                   )
—————————————————————)

### ANSWER

Defendants Veolia Transportation Services, Inc. and Veolia Transportation, Inc.,

(collectively, "Veolia"), answer the Complaint of Plaintiff National Railroad Passenger

Corporation ("Amtrak") as follows:

### INTRODUCTION

Veolia denies the allegations in the Introduction of the Complaint.

### PARTIES, JURISDICTION AND VENUE

1.      Veolia denies knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 1 of the Complaint.

2.      Veolia denies the allegations in Paragraph 2 of the Complaint.

3.      Veolia denies the allegation in Paragraph 3 of the Complaint.

4.      Veolia denies the allegations in Paragraph 4 of the Complaint, except it admits

that Plaintiff purports to bring this action under 28 U.S.C. §§ 1331, 1332, and 1349.

5.      Veolia denies that a substantial part of the events or omissions allegedly giving

rise to these claims took part in the District of Columbia, and Veolia denies having "minimum

contacts" with the District of Columbia.  Veolia denies the remaining allegations in Paragraph 5 of the Complaint, except it admits that Plaintiff purports to establish venue pursuant to 28 U.S.C. § 1391.

### THE TRI-RAIL COMMUTER RAIL OPERATIONS CONTRACT

6.      Veolia admits the allegations in Paragraph 6 of the Complaint.

7.      Veolia denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 7 and denies the remaining allegations in Paragraph 7 of the Complaint.

8.      Veolia denies the allegations in Paragraph 8 of the Complaint, except Veolia denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 8.

9.      Veolia admits that the South Florida Regional Transportation Authority was created in 2003 pursuant to legislation and signed into law by Governor Bush.  Veolia denies knowledge or information sufficient to form a belief as to the allegations as to the purpose of the law in the first sentence of Paragraph 9 of the Complaint.  Veolia admits the allegations in the second sentence of Paragraph 9.

10.     Veolia denies knowledge or information sufficient to form a belief as to the first and third sentences of Paragraph 10 of the Complaint.  Veolia admits the allegations in the second sentence of Paragraph 10 of the Complaint.

11.     Veolia admits the allegations in the first and third sentences of Paragraph 11. Veolia denies knowledge or information sufficient to form a belief as to the allegations in the Second Sentence of Paragraph 11 of the Complaint.

12.     Veolia admits the allegations in Paragraph 12 of the Complaint, with respect to the Operations RFP as amended.  The original RFP called for bidders to submit proposals on or before November 17, 2006.

13.     Veolia admits the allegations in the second sentence of Paragraph 13 of the Complaint.  Veolia denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 13 of the Complaint, except Veolia admits that SFRTA's Tri-Rail RFP required the identification of a Key Management Team, and that the Key Management Team for the successful bidder would be responsible for managing certain functions for Tri-Rail.

14.     Veolia admits the allegations in Paragraph 14 of the Complaint concerning the specific requirements of the Operations RFP, but denies knowledge or information sufficient to form a belief as to the characterization of such requirements as "strict."

15.     Veolia denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint, except Veolia admits that it received notice from SFRTA about the Operations RFP.

16.     Veolia denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint.

17.     Veolia denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint, except Veolia  admits that it submitted a proposal in response to the Operations RFP by January 11, 2007, and that Amtrak submitted a proposal in response to the Operations RFP.

18.     Veolia admits the allegations in Paragraph 18 of the Complaint, except denies that its proposal stated that Mr. Birckett "was recruited from Amtrak," and denies that Mr. Birckett joined Veolia only "a few months before Veolia submitted its proposal."

19.     Veolia denies the allegations in Paragraph 19 of the Complaint.

20.     Veolia denies the allegations in Paragraph 20 of the Complaint, except Veolia admits that Sidney Birckett recruited individuals for Veolia's Key Management Team, and further notes that Veolia recruited from multiple sources, not just Amtrak.

21.     Veolia denies the allegations in Paragraph 21 of the Complaint, except Veolia admits that Veolia identified individuals working at Amtrak and elsewhere who Veolia believed had the requisite qualifications to serve as members of the Key Management Team on the SFRTA project.

22.     Veolia denies the allegations in Paragraph 22 of the Complaint, except it admits that it listed Douglas Stencil, Victor Salemme, Gary Mauck, and Robert Meizinger as part of its proposed Key Management Team in its response to the Operations RFP, and it admits the allegations in the third sentence of Paragraph 22.

23.     Veolia admits the allegation in Paragraph 23 of the Complaint insofar as it understands that Stencil, Salemme, and Mauck were Amtrak employees at the time they signed their contingent offers of employment.

24.     Veolia denies the allegations in Paragraph 24 of the Complaint, except it admits that Douglas Stencil joined Amtrak in 1986 and was a Senior Analyst for Operating Practices in Amtrak's Southern Division.  Veolia further admits that Mr. Stencil had experience in safety, training and regulatory standards, that he had been certified as a locomotive engineer, conductor, yard master and train master, and that he had worked for Amtrak in Florida.

25.     Veolia admits the allegations in Paragraph 25 of the Complaint.

26.     Veolia admits the allegations in Paragraph 26 of the Complaint.

27.     Veolia denies the allegations in Paragraph 27 of the Complaint, except Veolia admits the allegations in the second, third and fourth sentences of Paragraph 27, and admits that Veolia's Tri-Rail proposal described the duties of each member of the proposed Key Management Team.

28.     Veolia denies the allegations in Paragraph 28 of the Complaint, except it admits that it informed SFRTA that Messrs. Stencil, Salemme and Mauck were highly qualified, that Mr. Stencil had a deep understanding of the railroad industry, that Mr. Salemme had a long and rich career in railroad operations, and that Mr. Mauck was a seasoned leader.  Veolia further admits that Veolia informed SFRTA in a cover letter that the members of its Key Management Team had a combined 130 years of railroad experience.  Veolia denies knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 28 of the Complaint.

29.     Veolia denies the allegations in Paragraph 29 of the Complaint, except Veolia admits that the excerpts in quotation marks in Paragraph 29 of the Complaint are quoted from Veolia's response to the Operations RFP, if incompletely and in adversarial fashion.

30.     Veolia denies the allegations in Paragraph 30 of the Complaint.

31.     Veolia admits the allegations in the first and third sentences of Paragraph 31 of the Complaint, except denies knowledge or information sufficient to form a belief as to whether Mr. Mauck or his authorized representative signed the Mauck Key Employee Certification. Veolia denies knowledge or information sufficient to form a belief as to the truth of the

allegations in the second sentence of Paragraph 31 of the Complaint, and notes that the Key Employee Certifications were a requirement of the RFP.

32.     Veolia admits the allegations in Paragraph 32 of the Complaint, except denies knowledge or information sufficient to form a belief as to whether Mr. Mauck or his authorized representative signed Mr. Mauck's Key Employee Certification.

33.     Veolia denies the allegations in Paragraph 33 of the Complaint.

34.     Veolia admits the allegations in Paragraph 34 of the Complaint, but denies knowledge or information sufficient to form a belief as to the allegations "[f]or its part" and allegations characterizing what the resumes "clearly" showed.

35.     Veolia denies the allegations in Paragraph 35 of the Complaint, except Veolia admits that material posted on its website speaks for itself.  Veolia denies that the quotation provided in the text of Paragraph 35 is accurate.

36.     Veolia denies the allegations in Paragraph 36 of the Complaint, except it admits that Veolia represented in its Tri-Rail Proposal that the members of its key management team were "ready to come on board immediately."

37.     Veolia admits that it listed Mr. Stencil as a member of the Key Management Team on the Tri-Rail Proposal it submitted to SFRTA, and that it identified safety as "the most crucial attribute of rail transportation."  Veolia identified Mr. Stencil as its safety representative first.  Only later did Amtrak purportedly identify Mr. Stencil as a proposed member of its Key Management Team.  Veolia admits upon information and belief the remaining allegations in Paragraph 37 of the Complaint.

38.     Veolia denies the allegations in Paragraph 38 of the Complaint.

39.     Veolia denies the allegations in Paragraph 39 of the Complaint.

40.     Veolia denies the allegations in Paragraph 40 of the Complaint.

41.     Veolia denies the allegations in Paragraph 41 of the Complaint, except Veolia admits that Amtrak named Mr. Stencil as a member of Amtrak's Key Management Team, that Mr. Salemme was approached by a senior individual at Amtrak regarding Amtrak's Tri-Rail proposal, and that Mr. Salemme informed Amtrak that he planned to leave Amtrak.

42.     Veolia denies the allegations in Paragraph 42 of the Complaint.

43.     Veolia admits the allegations in Paragraph 43 of the Complaint.

44.     Veolia admits the allegations in the first sentence of Paragraph 44.  Veolia denies the allegations in the second sentence of Paragraph 44, except it admits the allegation that "Qualifications and Experience" accounted for 35 percent of a proposal's score.  Veolia denies the allegations in the third sentence of Paragraph 44 of the Complaint.

45.     Veolia admits the allegations in Paragraph 45 of the Complaint.

46.     Veolia admits the allegations in Paragraph 46 of the Complaint, but denies the implication that the January 24, 2007 meeting was the only time at which the evaluation occurred.

47.     Veolia admits the allegations in Paragraph 47 of the Complaint.

48.     Veolia denies that the Evaluation Committee's memorandum "listed perceived strengths of the Veolia Proposal."  Veolia admits that Veolia "was found to be technically qualified" by the Evaluation Committee for seven (7) reasons: (1) "Experienced company with worldwide experience;" (2) "Possess U.S. Commuter Rail Experience;" (3) "Knowledge of shared rail corridors;" (4) "Proposed emphasis on customer service;" (5) Strong qualifications for Key Management Team; (6) Proposed innovations for service improvements; and (7) Detailed Mobilization Plan and Schedule."

49.     Veolia admits that the individual committee members of the Evaluation Committee provided comments on the Amtrak and Veolia proposals but denies Amtrak's characterization of those comments.  Veolia denies the allegation in subparagraph (a) that Evaluation Committee member Ed Byers "singled out for praise" Veolia's "Qualified Key Management team."  While Veolia admits that Evaluation Committee member Ed Woods scored the proposals as alleged in subparagraph (b), Veolia denies that Mr. Woods criticized Amtrak for naming the "same person as Veolia for Safety" or "hiring more personnel which could drive up costs," which were listed as "Questions for Discussion (if necessary)" rather than "Weaknesses" or "Deficiencies."  In evaluating Veolia, Mr. Woods also noted as a question for discussion that Veolia was "using the same person for safety."  Veolia denies the allegation in subparagraph (c) that Evaluation Committee member Dan Mazza "complimented" Veolia's "experienced team."  Veolia admits the allegation in subparagraph (d).

50.     Veolia admits that SFRTA awarded it the Tri-Rail operations contract.  Veolia denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 50 of the Complaint.

51.     Veolia admits the allegation in Paragraph 51 of the Complaint.

52.     Veolia denies the allegations in Paragraph 52 of the Complaint.

## COUNT I

### Aiding and Abetting – Breach of Fiduciary Duty

53.     Veolia incorporates by reference its responses to Paragraphs 1 through 52 above as if fully set forth here.

54.     Veolia denies the allegations in Paragraph 54 of the Complaint.

55.     Veolia denies the allegations in Paragraph 55 of the Complaint.

56.     Veolia denies the allegations in Paragraph 56 of the Complaint.

57.     Veolia denies the allegations in Paragraph 57 of the Complaint.

58.     Veolia denies the allegations in Paragraph 58 of the Complaint.  Paragraph 1.10 of the RFP allowed SFRTA to reject all proposals, and the Amtrak proposal was so exorbitantly priced at $163 million for ten years (compared to Veolia's winning bid of $97 million for ten years) that no rational decision maker would have awarded the contract to Amtrak.

59.     Veolia denies the allegations in Paragraph 59 of the Complaint.

## COUNT II

### Tortious Interference with Economic Advantage

60.     Veolia incorporates by reference its responses to Paragraphs 1 through 59 above as if fully set forth here.

61.     Veolia denies the allegations in Paragraph 61 of the Complaint.  Paragraph 1.10 of the RFP allowed SFRTA to reject all proposals, and the Amtrak proposal was so exorbitantly priced at $163 million for ten years (compared to Veolia's winning bid of $97 million for ten years) that no rational decision maker would have awarded the contract to Amtrak.

62.     Veolia denies the allegations in Paragraph 62 of the Complaint.

63.     Veolia denies the allegations in Paragraph 63 of the Complaint.

64.     Veolia denies the allegations in Paragraph 64 of the Complaint.

65.     Veolia denies the allegations in Paragraph 65 of the Complaint.

66.     Veolia denies the allegations in Paragraph 66 of the Complaint.

To the extent a response is required to the prayer for relief, Veolia denies the allegations in such prayer, and further denies that Amtrak is entitled to any relief.

Veolia denies each and every allegation in the Complaint not specifically admitted above, including any allegations in headings, captions, or titles..

## FIRST AFFIRMATIVE DEFENSE

Amtrak fails to state a claim for which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Amtrak's claims are barred by the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

Amtrak's claims are barred by the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

Amtrak failed to mitigate damages.

## FIFTH AFFIRMATIVE DEFENSE

Amtrak's claim for attorneys' fees and costs is barred by the unavailability of attorneys' fees under the common law tort claims alleged in the Complaint.

## SIXTH AFFIRMATIVE DEFENSE

Amtrak's claims are barred by the doctrine of waiver.

## SEVENTH AFFIRMATIVE DEFENSE

Amtrak failed to exhaust its administrative remedies.

## EIGHTH AFFIRMATIVE DEFENSE

Amtrak's claims are barred by the doctrine of estoppel.

## NINTH AFFIRMATIVE DEFENSE

Amtrak's claims fail as against public policy insofar as they have the purpose or effect of attempting to restrain the legal rights of Amtrak's at-will employees.

## <u>TENTH AFFIRMATIVE DEFENSE</u>

Amtrak's claims fail as against public policy insofar as they have the purpose or effect of attempting to constrain competition in the competitive commuter light rail market.

## <u>ELEVENTH AFFIRMATIVE DEFENSE</u>

Amtrak's claims fail as against public policy insofar as they constitute an unfair trade practice.

## <u>ADDITIONAL DEFENSES</u>

Veolia reserves the right to assert additional defenses at such time and to such extent as warranted by discovery and the factual developments of the case.

Dated: Washington, D.C.
      June 10, 2008

/s/ Kim Sperduto
Kim Sperduto
(D.C. Bar. No. 416127)
T. Stewart Rauch[1]
(D.C. Bar No. 494987)

THE SPERDUTO LAW FIRM, PLC
1133 Twentieth Street, NW
Second Floor
Washington, D.C.  20036
Phone: (202) 408-8900
Fax:  (202) 408-8910

*Attorney for Defendants Veolia Transportation Services, Inc., and Veolia Transportation, Inc.*

---

[1] Admission to the bar of this Court is pending.

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of Defendants' Answer to be served

electronically on counsel listed below using the Court's Electronic Case Filing System, pursuant

to Local Rule 5.4, on this 10th day of June 2008.


                         /s/ T. Stewart Rauch
                         T. Stewart Rauch



Gary A. Orseck, Esq.
Eva A. Temkin, Esq.
ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411-L
Washington, DC 20006

Counsel for Plaintiff