**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
NATIONAL RAILROAD PASSENGER          )
CORPORATION,                                     )
                                                    )
          Plaintiff,                              )
                                                    )
         v.                                          )        Civil Action No. 07-1263 (RBW)
                                                    )
VEOLIA TRANSPORTATION SERVICES,)
INC., ET AL.,                                     )
                                                    )
         Defendants                            )
                                                    )
_____)

**MEMORANDUM OPINION**

The plaintiff, National Railroad Passenger Corporation ("Amtrak"), filed this action for

damages in this Court on July 16, 2007, against Veolia Transportation Services, Inc. and Veolia

Transportation Inc. (collectively "the defendants" or "Veolia"), asserting claims of aiding and

abetting the breach of a fiduciary duty, Complaint ("Compl.") ¶¶ 53-59, and tortious interference

with an economic advantage, id. ¶¶ 60-66.[1]  Currently before the Court is the Defendants'

Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted pursuant to

Federal Rule Civil Procedure 12(b)(6).[2]  For the reasons set forth below, the defendants' motion

is denied.

---

[1]  This Court's jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332 (2006).

[2]  Also filed in connection with this motion are the Defendants' Memorandum in Support of the Motion to
Dismiss ("Defs.' Mem."), the Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), and the
Defendants' Reply Memorandum in Support of Motion to Dismiss ("Defs.' Reply").

## I. Background

Both "Amtrak and . . .  Veolia are providers of transportation services, including
operations services and commuter rail systems."  Compl. ¶ 6.  Amtrak's complaint alleges that
Veolia wrongfully recruited and enticed key members of Amtrak's staff to terminate their
employment to take positions with Veolia, id. ¶¶ 21-23, causing Amtrak to suffer an economic
loss, id. ¶ 66.

The parties dispute arose against the following backdrop.  "On or about October 3, 2006,
the South Florida Regional Transportation Authority ("SFRTA") issued Request for Proposal
No. 06-112 ("the Operations RFP") , which sought a contract to provide Operator Services for
SFRTA's Tri-Rail Commuter Rail System in Florida ("the Operations Contract")."  Id. ¶ 9. "The
Operations RFP requested proposals to provide operations service for the Tri-Rail system's 48
weekday, 16 Saturday, and 14 Sunday and Holiday revenue trains."  Id. ¶ 11.  "The term of the
agreement [between a successful bidder/contractor and the SFRTA] was to be [for] seven years
with [a] one three-year option period."  Id.  Proposals for the Operations Contract were due on or
before January 11, 2007.  Id. ¶ 12.  The requirements needed for a successful bid included, inter
alia, the composition of a "'Key Management Team'" that would be charged with implementing
and managing the services to be provided.  Id. ¶ 13.  The Operations RFP required each bidder to
list the actual names of the members of the key management team and what their responsibilities
would include.  Id.  "The Operations RFP set forth strict requirements concerning the
qualifications of the Key Management Team Members."  Id. ¶ 14.  Amtrak and Veolia were the
only two companies that submitted proposals by the January 11, 2007 deadline.  Id. ¶ 17.

Veolia's proposal identified General Manager Sidney N. Birckett, a former Amtrak

2

employee for thirty years, as the head of its Key Management Team.  Id. ¶ 18.  Due to the limited

pool of rail transportation managers with the stringent qualifications demanded by the SFRTA's

Operations RFP and the fact that many of the individuals with the qualifications were already

employed on other projects, Amtrak alleges that Veolia lacked the necessary personnel to further

staff the Key Management Team.  Id. ¶ 19.  Thus, Amtrak asserts that Veolia "was at risk of

being unable to submit a qualifying proposal to [the] SFRTA."  Id.  Amtrak contends  that "[to]

overcome this substantial obstacle, . . . [Birckett, after he became a Veolia employee,] set about

to recruit Veolia's proposed Key Management Team from among the ranks of Birckett's former

colleagues at Amtrak."  Id. ¶ 20.  And, unbeknownst to Amtrak, Veolia purportedly proceeded to

identify and solicit senior Amtrak operations personnel who were highly skilled in the requisite

SFRTA Operations RFP requirements.  Id. ¶ 21.  Amtrak alleges that in order to induce the

solicited Amtrak employees to abandon Amtrak and sign on with Veolia, the employees were

promised favorable terms and key management positions if Veolia's bid was selected.  Id.

Amtrak asserts that  "[a]t the same time, and in exchange for the benefits that Veolia offered

these Amtrak employees, Veolia demanded that they agree not to allow Amtrak to list them as

members of Amtrak's proposed Key Management Team."  Id.  Veolia successfully solicited the

services of "(1) Douglas Stencil, Veolia's proposed Safety and Training Manger; (2) Victor

Salemme, Veolia's proposed Superintendent of Transportation; and (3) Gary Mauck, Veolia's

proposed Communications Manager,"[3] who, according to Amtrak, were all Amtrak employees

---

[3] " The fourth and final member of Veolia's proposed Key Management Team [was] Robert Meizinger,
[ ]Veolia's proposed Human Resources and Labor Relations Manager [ ]."  Compl. ¶ 22.  Meizinger was also a
former Amtrak employee, however, he was not employed by Amtrak at the time he was recruited.  Id.

when the solicitations were initiated.  Id. ¶ 22.[4]  "Veolia boasted that the members of its proposed Key Management Team possessed a combined 130 years of railroad experience" and Amtrak asserts that "approximately 110 of those years were with Amtrak."  Id. ¶ 28.  "Similarly, Veolia stressed that its team members had 'built their reputations on delivering the best,' and had 'worked together before and ha[d] already established solid working relationships with one another.'"  Id. ¶ 29.  Amtrak argues that "those reputations were built, and those solid working relationships established at Amtrak."  Id.

Once Amtrak's and Veolia's proposals for the SFRTA contract were submitted, an Evaluation Committee used a scoring system to decide which party should be awarded the contract.  Id.  ¶¶ 43-47.  The Evaluation Committee awarded Veolia a total score of 85, including a score of 28 for the qualifications and experience of its personnel identified in its proposal.  On the other hand, Amtrak received a total score of 62.3, with a score of 27.3 for the qualifications and experience of the personnel named in its proposal.  Id. ¶ 47.  "The Evaluation Committee's memorandum also listed perceived strengths of the Veolia proposal, including that its Key Management Team possessed '[s]trong qualifications'; that Veolia was an '[e]xperienced company with worldwide resources'; that it '[p]ossess[ed] U.S. Commuter Rail experience'; and that it possessed '[k]nowledge of shared rail corridors.'"  Id. ¶ 48 (emphasis in original).  "Based on the Evaluation Committee's memorandum and recommendation, the Tri-Rail System operations contract was awarded to Veolia."  Id. ¶ 50.

In a January 24, 2007 letter, Amtrak was informed of Veolia's successful bid.  Id. ¶ 52.

---

[4]  Stencil had become an Amtrak employee in 1986, Salemme joined Amtrak in 1987, and Mauck had been employed by Amtrak since 1973.  Compl. ¶¶ 24-26.

Subsequently, on January 26, 2007, Amtrak learned "that Veolia had [allegedly] induced Stencil, Salemme and Mauck to support Veolia's competing bid, and also learned that Veolia had extracted promises from each of them not to support Amtrak's bid." Id. Furthermore, Amtrak contends that as employees, Stencil, Salemme, and Mauck ("the three employees"), "owed Amtrak fiduciary duties of care, undivided loyalty, and obedience," id. ¶ 33; and that Veolia aided and abetted the solicited employees to breach those duties rendering Amtrak not as qualified as it might have been when it submitted its proposal, id. ¶ 42.

In this action, Amtrak is seeking to recover the damages it contends it suffered as a result of not being awarded the contract and for tortious interference with a prospective economic advantage. The first count of the complaint claims that Amtrak was owed a duty of loyalty from the three employees who were enticed to leave its employ by the defendants, and that the defendants' wrongful acts aided and abetted the three employees' breach of that duty. Id. ¶¶ 39-54. The second count of the complaint alleges that Veolia, through its actions, improperly interfered with Amtrak's prospective economic advantage. Id. ¶¶ 63-66. Veolia has moved to dismiss Amtrak's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. In support of their argument, Veolia contends that (1) Amtrak has failed to demonstrate that any alleged damages were caused by Veolia's actions; (2) Amtrak has failed to allege a cause of action for aiding and abetting the breach of a fiduciary duty; (3) Amtrak has failed to allege a cause of action for tortious interference with an economic advantage; and (4) allowing Amtrak to maintain its claims would be contrary to public policy. Defendants' Memorandum in Support of the Motion to Dismiss ("Defs.' Mem.") at 3, 5, 9, 12.

## II. Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted

pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations

and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff

the benefit of all reasonable inferences that can be derived from the facts alleged in the

complaint.  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  In deciding

whether to dismiss a claim under Rule 12(b)(6), the Court may consider only the facts alleged in

the complaint, documents attached as exhibits or incorporated by reference in the complaint, and

matters about which the Court may take judicial notice.[5]  EEOC v. St. Francis Xavier Parochial

Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997).  A Rule 12(b)(6) motion should be granted and the

claim dismissed only if the plaintiff does not provide "enough facts to state a claim to relief that

is plausible on its face."  Bell Atl. Corp. v. Twombly, ___U.S. ___, ___, 127 S. Ct. 1955, 1974

(2007).

---

[5]  Although Rule 12(d) of the Federal Rules of Civil Procedure requires that a motion under Rule 12(b)(6) be considered as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court," the Court's consideration of the exhibits attached to the plaintiff's memorandum in opposition to the defendants' motion does not require such a conversion since the plaintiff has extensively referenced and extracted quotes from the exhibits, not only in his opposition papers but also in its complaint in support of his claims.  Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (holding in wrongful termination suit that "various letters and materials produced in the course of plaintiff's discharge proceeding, all of which have been attached to plaintiff's opposition papers, fall under this exception and may be considered without converting the motion to one for summary judgment"); see Langer v. George Washington Univ., 498 F. Supp. 2d 196, 202 n.1 (D.D.C. 2007) (citation and internal quotation marks omitted) (declining to convert a 12(b)(6) motion to dismiss into a motion for summary judgment merely for taking into consideration a letter that was referred to in the complaint and was "central to plaintiff's claim."); Daisley v. Riggs Bank, N.A., 372 F. Supp. 2d 61, 67 n.1 (D.D.C. 2005) (same); see also Kurtis A. Kemper, What Matters not Contained in Pleadings may be Considered in Ruling on a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or Motion for Judgment on the Pleadings under Rule 12(c) without Conversion to Motion for Summary Judgment, 138 A.L.R. Fed. 393 (1997) (citing numerous cases where courts have considered materials referenced or incorporated in complaint and attached to later pleadings without converting Rule 12(b)(6) motions into summary judgment motions).

### III. Legal Analysis

### A.  The Plaintiff's Claim of Aiding and Abetting the Breach of a Fiduciary Duty

Veolia seeks dismissal under Rule 12(b)(6) of Amtrak's aiding and abetting the breach of a fiduciary duty claim on the ground that: (1) Amtrak has failed to demonstrate that the former at-will Amtrak employees had a fiduciary duty to Amtrak or that the employees had a contract with Amtrak restricting them from pursuing other employment opportunities, Defs.' Mem. at 7; (2) Amtrak's complaint does not show how the former Amtrak employees breached a fiduciary duty owed to Amtrak because the Operation Contract was not within the scope of any of the three employees' employment or duties with Amtrak, id. at 9; (3) Amtrak has failed to show that Veolia knew of any fiduciary duty the three employees allegedly owed to Amtrak and knew of Amtrak's interest in acquiring the Operations Contract, Defendants' Reply Memorandum in Support of Motion to Dismiss ("Defs.' Reply") at 8; and (4) Amtrak has not asserted facts which show that Veolia encouraged the former Amtrak employees to breach a fiduciary duty they owed to Amtrak, id.  Instead, Veolia contends that it merely provided the three employees an opportunity for better employment.  Defs.' Mem. at 5.  Accordingly, Veolia argues that Amtrak has failed to state a claim for aiding and abetting the breach of a fiduciary duty upon which relief may be granted.

Veolia's position is premised on the proposition that it acted completely within its rights when it offered the three Amtrak employees new job opportunities.  Id. Veolia further contends that in order to sustain its claim that Veolia aided and abetted the breach of a fiduciary duty, Amtrak would have to show that the three employees owed Amtrak a duty of loyalty.  Id.  And,

according to Veolia, because Amtrak's employees were not under any contractual obligations, and thus were at-will employees, Amtrak has failed to state an actionable claim.  Specifically, Veolia asserts, "Amtrak's fiduciary claim contradicts the well-recognized and firmly-established rule that there is nothing actionable about recruiting a competitor's employees, where those employees are at-will and not subject to non-compete agreements or other restrictive covenants."  Id. at 6.  Veolia offers support for its position by citing Schmersahl, Treloar & Co., P.C. v. McHugh, 28 S.W.3d 345 (Mo. Ct. App. 2000), which stated:

> Competition in the marketplace encompasses competition in the labor market, including an employer's ability to solicit and hire the at-will employees of another and an at-will employee's ability to seek employment at better terms.  There is no wrong in making an offer of employment to an at-will employee, even though the employee and his new employer may compete with the former employer.  The law's policy favors free competition when no agreement provides otherwise.

id. at 349, 351;  Defs.' Mem. at 6.  Thus, Veolia argues that "Amtrak has done nothing to show why Veolia's engaging in the proper and well-accepted practice of recruiting at-will employees from a competitor is improper or gives rise to any cause of action."  Defs.' Mem. at 6.

Amtrak responds that (1) its former employees "owed [to it] fiduciary duties of care, undivided loyalty, and obedience," Compl. ¶ 33; (2) the three employees breached their fiduciary duties to Amtrak when each of them allowed Veolia to list them in its bid proposal, and then agreed and later abided by a promise to prohibit Amtrak from listing them on Amtrak's bid proposal, id. ¶ 22; (3) Veolia knew that the former employees owed a fiduciary duty to Amtrak not to compete against their employer, id. ¶ 57, because "Veolia's own Conflict of Interest Policy provides that 'no employee may divert any person, business entity or financial opportunity that the employee . . . knows or should know [Veolia] wants to pursue,'" id. ¶ 35; and (4) Veolia

8

encouraged the three employees to breach their fiduciary duty to Amtrak by offering them employment in exchange for a promise that the three of them would not permit Amtrak to list them in its own bid proposal, id. ¶ 21.

Amtrak further asserts that "the law in every jurisdiction in the country holds that an employee owes his employer a strict duty not to compete with his employer for business opportunities '[t]hroughout the duration of [the] relationship.'"  Plaintiff National Railroad Passenger Corporation's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n") at 7 (quoting RESTATEMENT (THIRD) OF AGENCY § 8.04 (2006)).  Specifically, Amtrak contends that Veolia caused Amtrak's employees to violate their fiduciary duties to Amtrak while they were still employed by Amtrak.  Id. at 8.  Thus, Amtrak argues, regardless of the absence of a non-compete clause and the employees' at-will status, the employees were precluded from competing with Amtrak for business opportunities while still employed by the company.  Id. at 9.  Thus, when Veolia solicited the employees and caused them to violate the duty they owed to Amtrak, Veolia aided and abetted the breach.  Id. at 8-10.

Veolia counters that even if the three employees owed Amtrak a fiduciary duty, such duty was limited to the scope of each individual employee's employment.  Defs.' Mem. at 9.  And, Veolia contends that "while the new bid for the South Florida project may have been within the scope of Amtrak's business, it was not within the existing scope of any of the three men's employment or duties."  Id. Veolia also argues that because it would have "apparently" been necessary for each of the three men to interview for a position on Amtrak's Key Management Team, possible placement on the team must be considered as outside the "three men's employment or duties."  Id.  Amtrak, on the other hand, asserts that

> an employee's fiduciary duty to his employer has never been limited
> to the specific tasks that he may be assigned to at any given time; the
> duty broadly applies 'regardless of the nature of an agent's duties or
> position or the relative status that an agent or other employee
> occupies within an organization.'

Pl.'s Opp'n at 9 (quoting RESTATEMENT (THIRD) OF AGENCY § 8.04 cmt. b).

In order for Amtrak to survive a Rule 12(b)(6) motion to dismiss on a claim of aiding and

abetting the breach of a fiduciary duty, it must plead: "(1) a fiduciary duty on the part of the

primary wrongdoer, (2) a breach of this fiduciary duty, (3) knowledge of this breach by the

alleged aider and abettor, and (4) the aider and abettor's substantial assistance or encouragement

of the wrongdoing." Amerifirst Bank v. Bomar, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991)[6];

Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983). The Court will examine whether

Amtrak's complaint satisfies these requirements.

### 1. Fiduciary Duty of the Three Employees

Generally, fiduciary principles are applicable to employees. Gov't Relations Inc. v.

Howe, No. Civ. A 05-1081, 2007 WL 201264, at *10 (D.D.C. Jan. 24, 2007) (In "the field of

corporate employment . . . it has been established that employees . . . owe an undivided and

unselfish loyalty to the corporation") (citations and internal quotation marks omitted);

RESTATEMENT (THIRD) AGENCY § 8.01 cmt. c ("All who assent to act on behalf of another person

and subject to that person's control are common-law agents . . . and are subject to the general

fiduciary principle . . . [; t]hus, the fiduciary principle is applicable to. . . employees . . . .").

Employees may qualify as agents, Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1085 (9th Cir.

---

[6] The Court will examine Amtrak's claim that Veolia aiding and abetting the breach of a fiduciary duty under District of Columbia law; however, it should be noted that the standard for pleading such a claim is the same under Florida law. See Amerifirst Bank, 757 F. Supp. at 1380.

2003), cert. denied, 541 U.S. 1009 (2004); see also Judah v. Reiner, 744 A.2d 1037, 1039-40 &

n.5 (D.C. 2000) (stating that "[v]arious labels have been used to describe [an agency]

relationship, including . . . employer-employee").  Whether an agency relationship existed

between Amtrak and its three former employees depends, in part,  on whether Amtrak had the

right to control and direct the three employees' work performance, the manner in which they

conducted their work, and whether their work was part of the regular business of Amtrak.  See

LeGrand v. Ins. Co. of N. Am., 241 A.2d 734, 735 (D.C. Cir. 1968) (citing Dovell v. Arundel

Supply Corp., 361 F.2d 543, 544 (D.C. Cir. 1966)); Judah, 744 A.2d at 1040 (citation and

internal quotation marks omitted) ("The factors to be considered [in assessing the existence of an

agency relationship] include (1) the selection and engagement of the servant, (2) the payment of

wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether

the work is part of the regular business of the employer").  "Unless otherwise agreed, an agent is

subject to a duty to his principal to act solely for the benefit of the principal in all matters

connected with his agency."  Mercer Mgmt. Consulting, Inc. v. Wilde, 920 F. Supp. 219, 233

(D.D.C. 1996) (quoting  RESTATEMENT (SECOND) OF AGENCY § 387 (1958)).  Furthermore,

"[p]rior to [the] termination of employment, an [employee] may not solicit for himself . . .

business which the position requires the employee to obtain for the employer."  Id. at 234

(quotation omitted).

Amtrak claims that in assessing the fiduciary duty question, the three employees' at-will

status is irrelevant, Pl.'s Opp'n at 9, because the men were hired as "senior Amtrak operations

personnel," Compl. ¶ 21, and among the three employees' duties was the inherent requirement

that they were to refrain from "actively and directly competing with Amtrak with respect to a

business opportunity," id. ¶ 33; Pl. Opp'n at 7.   Furthermore, Amtrak asserts that the employees
were hired to use their best efforts on behalf of Amtrak for the full duration of their employment.
Compl. ¶ 33; Pl.'s Opp'n at 13.   These allegations are sufficient to support an inference of a
fiduciary duty owed to Amtrak on the part of the three former Amtrak employees.   Therefore,
Amtrak has satisfied the first prong needed to satisfy the liberal pleading standards under Rule
12(b)(6) to establish a claim for aiding and abetting the breach of a fiduciary duty.

### 2. Breach of the Fiduciary Duty

An agent owes a duty of loyalty to a principle when functioning within the scope of "the
subject matter of his agency," and if that duty is violated there will be a breach of the agent's
fiduciary duty.   See Mercer Mgmt. Consulting, Inc., 920 F. Supp. at 233 (quoting RESTATEMENT
(SECOND) OF AGENCY § 387).   In this regard, it is impermissible for an employee with a fiduciary
duty to "'solicit customers for [a] rival business before the [termination] of [] employment.'"   Jet
Courier Serv., Inc. v. Mulei, 771 P.2d 486, 493 (Colo. 1989) (quoting RESTATEMENT (SECOND)
OF AGENCY, supra, § 393 cmt. e).   Likewise, any action on the part of an employee that places
that employee in direct competition with the employer's best interests constitutes a breach of the
employee's fiduciary duty.   RESTATEMENT (THIRD) OF AGENCY, supra, § 8.04 cmt. b.

Here, Amtrak asserts in its complaint that at the time the bids for the Operations Contract
were being prepared and submitted, the three employees were still members of its workforce.
Compl. ¶¶ 31-32.   Amtrak also alleges that despite the duty they owed to Amtrak resulting from
their employment, the three employees gave Veolia authorization to include their names in a bid
proposal for a chance to win a contract that Amtrak was also courting.   Id. ¶¶ 33-38.
Furthermore, Amtrak asserts that it was denied the right to include its own employees in its bid

proposal.  Id. ¶ 42.  These allegations are sufficient to satisfy the second prong needed to

establish a claim of aiding and abetting the breach of a fiduciary duty.

### 3.  Knowledge of the Breach of a Fiduciary Duty

A general awareness of wrongdoing on the part of the one being aided or abetted is

sufficient to show knowledge on the part of an aider and abettor, see generally, Halberstam, 705

F.2d at 487-88, and Amtrak's complaint details that Veolia had a general awareness of its former

Amtrak employee's breach of their fiduciary duties.  Specifically, Amtrak asserts that Veolia

included with its bid proposal résumés which showed that the three men were then current

Amtrak employees, and secured agreements from them not to allow Amtrak to include them in

its bid proposal.  Compl. ¶¶ 21, 34.  Moreover, Amtrak contends that Veolia's  own Conflict of

Interest Policy, which provides that "no employee may divert any person, business entity or

financial opportunity that the employee . . . knows or should know [Veolia] wants to pursue," id.

¶ 35, suggests that Veolia knew that the actions of the three Amtrak employees conflicted with

the obligations they owed to Amtrak, id.

The District of Columbia Circuit  in Halberstam held that a defendants's acts warranted

civil liability under an aiding and abetting theory despite the defendant's "protestation[] . . . that

she knew absolutely nothing about" her companion's specific wrongdoing.  705 F.2d at 486

(emphasis in original).  The Circuit Court found that the District Court could properly infer that

the defendant had a general awareness of her role in her companion's criminal enterprise due to

her general knowledge of what she should have known concerning his suspicious activity and by

the information she provided on her income tax returns.  Id. at 475-76, 486.  Similarly, Amtrak

opines that Veolia had sufficient knowledge that the acts being committed by the three

employees were impermissible, and the Court agrees that this conclusion can reasonably be inferred from the facts alleged by Amtrak in its complaint to satisfy the third prong of a claim of aiding and abetting the breach of a fiduciary duty.

### 4.   Substantial Assistance or Encouragement of the Wrongdoing

"[T]he nature of the act encouraged, the amount [and kind] of assistance given; the defendant's absence or presence at the time of the [alleged] tort; [the defendant's] relation to the tortious actor; and the defendant's state of mind" are factors to be considered when examining the substantial assistance element in an aiding and abetting claim.  See Halberstam, 705 F.2d at 483-84.  Here, the complaint alleges that Veolia substantially assisted and encouraged the breach of Amtrak's former employees' fiduciary duties by offering them employment and positions in the performance of the Operations Contract.  Compl. ¶ 21.  Amtrak also contends that Veolia secured agreements from its former employees that they would not allow Amtrak to include them in its bid proposal.  Id. ¶¶ 21, 34.  These allegations adequately support an inference of substantial assistance under the theory of civil liability for aiding and abetting the breach of a fiduciary duty.  The fourth and final prong of this tort is therefore satisfied.

In summary, the Court finds that Amtrak has alleged facts in its complaint sufficient to state a claim for aiding and abetting the breach of a fiduciary duty owed to Amtrak by its three former employees arising from Veolia's solicitation, which requested that the former employees permit their names to be placed on Veolia's bid and provide services to Veolia if it was awarded the contract.

**B.  The Plaintiff's Claim of Tortious Interference with an Economic Advantage**

It is undisputed that Veolia and Amtrak are competitors in the public railroad industry and during the time encompassed by the complaint both were competing for acquisition of the Operation Contract, which Veolia was subsequently awarded.  Defs.' Mem. at 2-3.  Veolia seeks dismissal of Amtrak's tortious interference with an economic advantage claim arguing that (1) Amtrak has not plead sufficient facts to show that it had a business expectancy in acquiring the Operation Contract, Defs.' Reply at 10; (2) Amtrak's business expectancy in acquiring the Operations Contract is "far too speculative" and that its complaint shows only that it was a "hopeful bidder; id.; (3) Amtrak's complaint does not demonstrate that Veolia's acts were improper because Amtrak's former employees were at-will employees, id. at 11; and (4) Amtrak has failed to show that Veolia's actions caused Amtrak to lose its bid for the Operations Contract, Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief may Be Granted ("Defs.' Mot.") ¶ 1.  Furthermore, Veolia notes that they were awarded the contract because its bid was 22.7 points superior to Amtrak's bid and asserts that all of these points were not "attributed entirely" to the three former Amtrak employees identified in Veolia's bid.  Defs.' Reply at 13.  Veolia also argues that Amtrak has never asserted that it would have listed all three of its former employees in its bid or that it suffered "any inconvenience" as a result of Veolia's actions.  Id.  Veolia also insists that Amtrak has not shown "that it would have won the bid but for Veolia's actions," id. at 13, or "that Veolia's acts caused the specific damages it seeks [to recover]," id. at 14.  Moreover, Veolia represents that Amtrak could have challenged the bid award with SFRTA, and having failed to do so, Amtrak may not now argue that it was harmed by

Veolia's conduct.  Defs.' Mem. at 5.  Accordingly, Veolia alleges that Amtrak has failed to state

a claim upon which relief may be granted.

Amtrak responds that its complaint sufficiently alleges Veolia's tortious interference with

Amtrak's business expectancy in acquiring the Operations Contract.  Pl.'s Opp'n at 5.  Amtrak

maintains that it possessed a business expectancy with regard to the Operations Contract, Compl.

¶ 61, because Amtrak and Veolia were the only bidders, thus, if not for Veolia's actions, Veolia

could not have submitted a qualifying bid "at all" and Amtrak would have been awarded the

contract, Pl.'s Opp'n at 2 (emphasis in original).  Amtrak further alleges that Veolia knew of

Amtrak's business expectancy when it induced Amtrak's former employees to agree not to allow

Amtrak to list them in Amtrak's bid submission.  Id.  In addition, Amtrak asserts that because

Veolia induced Amtrak's former employees to allow Veolia to list them on its bid proposal,

Veolia effectively terminated Amtrak's business expectancy.  Compl. ¶ 21.  Amtrak also argues

that listing the Amtrak employees on its bid proposal earned Veolia more points in the

"Qualifications and Experience" category of the SFRTA requirements, which thereby influenced

the number of points Veolia received in the other categories.  See Pl.'s Opp'n, Ex. A (showing

the Evaluation Committee's analysis of Amtrak and Veolia's bid submissions).  Amtrak further

contends that because of Veolia's conduct, Amtrak failed to prevail on its bid and suffered

millions of dollars in damages resulting from its non-selection.  Compl. ¶ 30.  Finally, Amtrak

further purports that even though it did not challenge the bid award with the SFRTA, it is

nonetheless entitled to sue Veolia for their tortious interference of Amtrak's economic advantage.

Pl.'s Opp'n at 6.

In order for Amtrak to survive a Rule 12(b)(6) motion to dismiss its claim for intentional

interference with an economic advantage it "must plead (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (citations and internal quotation marks omitted); see also Walters v. Blankenship, 931 So. 2d 137, 139 (Fla. Dist. Ct. App. 2006); Smith v. Ocean State Bank, 335 So. 2d 641, 644 (Fla. Dist. Ct. App. 1976).[7] The Court will assess below whether Amtrak has satisfied these pleading requirements.

### 1.  Existence of a Valid Business Relationship or Expectancy

A legally recognizable business expectancy may include "the opportunity of obtaining customers," Carr v. Brown, 395 A.2d 79, 84 (D.C. 1978), that is "commercially reasonable to anticipate," Whelan v. Abell, 953 F.2d 663, 673 (D.C. Cir. 1992) (citation and internal quotation marks omitted).  "The elements of tortious interference with prospective business advantage mirror those of interference with [a] contract;" however, "[t]o prevail, . . . a plaintiff [] need not demonstrate the existence of a contract, but merely a prospective advantageous business transaction."  Casco Marina Dev., L.L.C. v. District of Columbia ReDev. Land Agency, 834 A.2d 77, 84 (D.C. 2003).  Here, Amtrak is alleging it had a legitimate expectation of winning the Operations Contract because it met the stringent bid requirements, had highly qualified employees, had an opportunity to acquire the SFRTA as a new customer, and Amtrak and Veolia were the only bidders.

---

[7]  The Court will also examine the plaintiff's  tortious interference with an economic advantage claim under District of Columbia  law; however, it should be noted that the standard for pleading such a claim is the same under Florida law.  See Walters, 931 So. 2d at 139.

In <u>Browning</u>, the District Court of Columbia Circuit held that a plaintiff had pled a valid business expectancy of acquiring a book publishing contract when the facts asserted in her complaint not only detailed "that she 'had a reasonable expectation' of selling her book to a publisher," but also that she was "encouraged" by a book editor "to continue working on her book" and "that she received favorable press coverage" in several national magazines regarding favorable future expectation of selling her book. 292 F.3d at 242. Amtrak's asserts allegations analogous with those made in <u>Browning</u>, and thus, Amtrak has alleged facts sufficient to support an inference of a business expectancy.

### 2.  The Interferer's Knowledge of the Relationship or Expectancy

To establish this tort, a plaintiff must show that an interferer knew of the business expectancy.  <u>See, e.g.</u>, <u>Bennett Enters., Inc. v. Domino's Pizza, Inc.</u>, 45 F.3d 493, 499 (D.C. Cir. 1995); <u>Smith</u>, 335 So. 2d at 643.  An interferer's knowledge of a plaintiff's relationship or expectancy may be shown by the interferer's conduct or spiteful or threatening words.  <u>See generally</u>, <u>Browning</u>, 292 F.3d 235 (finding knowledge on the part of the interferers due to their conduct and threatening words); <u>Walters</u>, 931 So.2d 137 (same).  Amtrak's complaint suggests that by Veolia's conduct (recruiting and inducing the three employees to agree not to allow Amtrak to list them on its bid proposal), it knew of Amtrak's business expectancy.  Compl.¶ 38; Pl. Opp'n at 10.  In <u>Walters</u>, a Florida state appellate court held that the plaintiffs satisfied this second prong of the claim where their complaint alleged that the defendants knew of the plaintiffs' business expectancy of selling four luxury condominium units at an auction but nonetheless proceeded to post a "for sale" sign on units the defendants owned in the same building on the day of the plaintiffs' auction, even though the defendants did not truly intend to

sale those units, and in fact removed the signs immediately after the conclusion of the plaintiffs'
auction.  931 So. 2d at 138-39.

Here, Amtrak contends that Veolia induced its three former employees to permit their
names to be included in Veolia's bid proposal and to not allow Amtrak to list them on its own
bid proposal because "Veolia knew that it would be competing against Amtrak" to acquire the
Operations Contract.  Compl. ¶ 40.  Similar to the defendants in Walters, Veolia's alleged
actions are an indication that they knew of Amtrak's business expectancy, having purportedly
sought to interfere with Amtrak's ability to present a successful bid proposal. Amtrak therefore
asserts allegations consistent with those made in Walters.  Accordingly, the facts alleged by
Amtrak support an inference that Veolia knew of Amtrak's business expectancy of acquiring the
Operations Contract.

### 3.  Intentional Interference by Inducing or Causing a Termination of the Expectancy

The third element of this claim is easily satisfied in this case.  "As its name would
suggest, intentional interference requires an element of intent." Bennett Enters., Inc., 45 F.3d at
499 (emphasis in original).  The burden of pleading this element of the claim is shouldered by a
plaintiff only upon "'a strong showing of intent' to disrupt [an] ongoing business relationship[]"
or expectancy.  Id. (citation and internal quotation marks omitted).  The District of Columbia
Circuit recognized that the element of intentional interference includes "conduct that prevent[s]
the [plaintiff] from acquiring . . . the prospective relationship in addition to conduct that
induc[es] or otherwise caus[es] a third person not to enter into . . . the prospective relation."
Browning, 292 F.3d at 244 (citation and internal quotation marks omitted).  And, the actor's
"interference must be improper."  Furash & Co., Inc. v. McClave, 130 F. Supp. 2d 48, 56

(D.D.C. 2001).

Amtrak contends that Veolia intentionally recruited and sought agreements from its three former employees not to allow Amtrak to list them on its bid proposal.  As a result of these actions, Amtrak is alleging that it was not awarded the Operations Contract.  And, Amtrak is asserting that Veolia's conduct was improper.

In <u>Smith</u>, an intermediate Florida appellate state court held that a plaintiff's complaint satisfied the intentional interference prong of a tortious interference claim by alleging that the defendant called a merchant with whom the plaintiff had negotiated the purchase of silver on two occasions and related untrue information about the plaintiff causing the merchant not to complete the silver transaction with the plaintiff.  335 So. 2d at 642-44.  Amtrak asserts allegations that comport with those made in <u>Smith</u>, and for the reasons expressed there, this Court concludes that Amtrak has alleged facts sufficient to defeat a Rule 12(b)(6) motion.

### 4. Resultant Damage

As with the third element of the plaintiff's tortious interference claim, the final element is also easily satisfied in this case and requires little discussion.  Resultant damages reasonably flow from the intentional interference of a business relationship or expectancy.  <u>See Williams v. Fed. Nat'l Mortgage Ass'n</u>, No. 05-1483, 2006 WL 1774252, at *9 (D.D.C. June 26, 2006) (finding that the plaintiff had "easily" satisfied this element by pleading "that [the] defendants' interference caused a breach or termination of her [business expectancy]" causing her to suffer a specified financial loss);  <u>Ins. Field Servs., Inc. v. White & White Inspection & Audit Serv., Inc.</u>, 384 So. 2d 303, 306 (Fla. Dist. Ct. App. 1980).  Thus, the resultant damage element of this

tort includes "the pecuniary loss of the benefits of the . . . prospective relation . . . [and] consequential losses for which the interference is the legal cause." RESTATEMENT (SECOND) OF TORTS § 774A (1979); see also PM Servs. Co. v. Odoi Assocs., Inc., No. 03-1810, 2006 WL 20382, at *35 (D.D.C. Jan. 4, 2006) (finding that the plaintiff had demonstrated a consequential loss, and thus injury, due to the plaintiff not being awarded the contract that was the subject of the litigation); Williams, 2006 WL 1774252, at *9 (finding that the plaintiff satisfied the resultant damage element by alleging a pecuniary loss due to the defendants' interference). Here, Amtrak's complaint alleges that Veolia induced  three Amtrak employees to allow Veolia to list them in its bid proposal for the Operations Contract, while at the same time precluding Amtrak from listing those same employees in Amtrak's bid proposal, and as a result of these actions Amtrak was not awarded the Operations Contract.  Amtrak further alleges that as a result of losing the Operations Contract, it suffered millions of dollars in damages.  Compl. ¶ 66.

In Browning, the District of Columbia Circuit held that allegations in a complaint that potential book publishers had expressed some level of interest in a book that was being written by the plaintiff, one editor had encouraged the plaintiff to complete the book, and several magazines had commented favorably on the commercial worthiness of the book once completed, were sufficient to assert that the plaintiff "'had a reasonable expectation'" of selling her book to a publisher and acquiring a profit from the sale, which was lost due to the defendant's actions.  292 F.3d at 242 (citation omitted).  Nothing less is being alleged here, and therefore, Amtrak has satisfied the fourth prong of its tortious interference with an economic advantage claim.

### IV.  Conclusion

The plaintiff having pled facts sufficient to support a claim of tortious interference with an economic advantage and a claim of aiding and abetting the breach of a fiduciary duty, the Court must deny the defendants' Rule 12(b)(6) motion to dismiss these claims for failure to state claims upon which relief may be granted.

**SO ORDERED** this 8th day of January, 2009.[8]

_____
REGGIE B. WALTON
United States District Judge

_____

[8]  This memorandum opinion accompanies the Order denying the defendants' motion to dismiss entered on March 28, 2008.