UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL RAILROAD
PASSENGER CORPORATION,

Plaintiff,

VEOLIA TRANSPORTATION
SERVICES, INC., *et al.*,

Defendants.

Civil Action No. 07-1263 (BJR)
MEMORANDUM OPINION
DENYING MOTION FOR JUDGMENT
OF DISGORGEMENT

Before the court is [Dkt. # 196] plaintiff National Railroad Passenger Corporation's ("Amtrak") motion for a judgment of disgorgement of the profits that defendant Veolia Transportation Services, Inc., and Veolia Transportation, Inc. ("Veolia") has earned to date on its contract with the South Florida Regional Transportation Authority to operate the Tri-Rail commuter line ("the contract"). Amtrak also seeks a constructive trust that would award it all of the future profits that Veolia earns on the contract. Upon review of Amtrak's motion, the opposition thereto, and the record of this case, the court concludes that Amtrak's motion must be denied.

## I. BACKGROUND

In 2008, Amtrak sued Veolia for aiding and abetting the breach by three Amtrak employees of their fiduciary duties of loyalty to Amtrak, among other torts. The facts underlying this this lawsuit are recounted in more detail in other court filings. *See National R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 791 F. Supp. 2d 33 (D.D.C. 2011). After the Honorable

1

Reggie B. Walton denied the parties' cross motions for summary judgment, this court oversaw a jury trial on the aiding and abetting claim. *Id.* On May 10, 2012, the jury returned a verdict finding that Amtrak had proved by a preponderance of the evidence (1) that any or all of the three Amtrak employees breached the fiduciary duty of loyalty that each owed to Amtrak; (2) that Veolia had knowledge of the breach; and (3) that Veolia substantially assisted or encouraged the breach. Verdict Form [Dkt. # 194]. The jury also found that Amtrak had not proved by a preponderance of the evidence that Veolia's wrongful conduct was a proximate cause of Amtrak's failure to win the Tri-Rail operations contract. *Id.* Accordingly, the jury did not award Amtrak compensatory or punitive damages.

Amtrak now seeks a judgment of disgorgement of the Veolia's profits earned to date—which amount to over $2.2 million—as well as imposition of a constructive trust for Amtrak's benefit with respect to Veolia's future profits. Before trial, and over Veolia's objection, this court ruled that Amtrak is entitled to pursue a disgorgement remedy against Veolia. *See* Order of April 18, 2012, at 2–4 [Dkt. # 165]. It also concluded that the court, rather than the jury would determine whether such a judgment was warranted. The court now evaluates Amtrak's claim and finds it without merit.[1]

---

[1] As a preliminary matter, the court will set the record straight with regard to a statement it made at trial pertaining to the required causation showing. During discussion with counsel about jury instructions and whether the court or the jury should make the disgorgement determination, the court stated that "it would be confusing to the jury to give them two completely different instructions on causation and burden of proof[.]". *See* Trial Tr. at 95:24-95:1 (May 7 P.M. Session). Amtrak cites this language as evidence that "[t]his Court has previously rejected Veolia's argument that the causation showing required for disgorgement is the same as that required for a compensatory damages claim . . . ." Amtrak is wrong. The court neither rejected nor adopted either parties' causation arguments during trial. As the context and plain language of its statement makes clear, the court was speaking in the hypothetical and evaluating the appropriateness of submitting the disgorgement question to the jury. Amtrak's misconstrual is noted and rejected.

## II. ANALYSIS

### A. The Jury Verdict Compels Denial of Disgorgement

Amtrak argues that it need not show injury in order to win disgorgement of Veolia's past and future profits on the contract. Veolia disagrees and advances a raft of arguments against the remedy. It maintains that disgorgement is a restitutionary remedy meant to restore to the plaintiff property that was wrongfully transferred or misappropriated, and that Amtrak has failed to make such a showing. Veolia further asserts the attorney-client cases that Amtrak cites in support of its motion are inapposite.[2] Veolia's position is more persuasive. As well, the court finds additional ground for rejecting Amtrak's arguments.

Disgorgement is an equitable remedy entrusted to the discretion of the district court. *So v. Suchanek*, 670 F.3d 1304, 1310 (D.C. Cir. 2012) (citing *United States v. Nacchio*, 573 F.3d 1062, 1080 (10th Cir. 2009); *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1096 (7th Cir. 1994)); *Smith–Haynie v. Dist. of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)); *see also Remsen Partners, Ltd. v. Stephen A. Goldberg Co.*, 755 A.2d 412, 421 (D.C. 2000). It is rarely awarded. *See Bode & Grenier, L.L.P. v. Knight*, 821 F. Supp. 2d 57, 65 (D.D.C. 2011) (citing *Avianca v. Corriea*, 1992 WL 93128, at *12 (D.D.C. April 13, 1992)).[3] In determining the

---

[2] Veolia also counters that, as a matter of law, Amtrak *must* show that its injury is proximately related to the breach and that it has failed to do so here. Because a determinate of this matter of law is not necessary to resolve the pending motion, the court does not do so here. Although this argument is incorrect under the Restatement, the court declines to delineate the precise circumstances under which it holds under D.C. law because such a determination is not required to resolve the pending motion.

[3] The Court notes that any unjust enrichment claim that seeks disgorgement of profits or any other assets that *belong to* Amtrak, was foreclosed at the summary judgment stage. *See National R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 791 F. Supp. 2d 33, 67 n.30 (D.D.C. 2011) ("The Court agrees that Amtrak fails to state a claim for unjust enrichment[.]"); *Cf. Vila v. Inter-American Inv., Corp.*, 570 F.3d 274, 280 (D.C. Cir. 2009) ("[T]he fundamental characteristic of unjust enrichment is 'that the defendant has been unjustly enriched by receiving something . . . that properly belongs to the plaintiff[, thereby] forcing restoration to the

appropriateness of the remedy in this case, the court will apply District of Columbia law. *See Hendry v. Pelland*, 73 F.3d 397 (D.C. Cir. 1996). It will also look to the Restatements of Restitution and Agency. *Id.*

As a general matter, plaintiffs are not required to show injury in order to disgorge a defendant's ill-gotten profits. *See* Restatement (Third) of Restitution, § 43. According to § 43 of the Restatement, "[a] person who obtains a benefit . . . in consequence of another's breach of such a duty, is liable in restitution to the person to whom the duty is owed." *Id.* To illustrate this rule, the Restatement furnishes an apt example:

> A and B are employed as estimators by public-works Contractor. While still employed by Contractor, A and B form a partnership to bid on a county project in competition with Contractor. The A–B partnership is awarded the contract and performs the job, realizing a profit of $25,000. On suit by Contractor, the court determines that A and B breached their duty of loyalty when they bid on the new project in competition with their employer. Contractor is entitled to restitution of $25,000 from A and B by the rule of this section. *It is not a condition of liability that, absent the disloyalty, Contractor would either have won the contract or made a profit on the job.*

*Id.*, Illus. 12 (emphasis added).

Amtrak maintains that this rule absolves it of any burden to show that it was harmed by Veolia's aiding and abetting of the employees' breach of their duty to Amtrak. Pointing to the jury finding that Veolia knowingly aided and abetted the employee's breach of their duty to Amtrak and to evidence entered at trial which, according to Amtrak, shows Veolia would not have earned the contract without the disloyal conduct, Amtrak argues that it is entitled to all of Veolia's past and future profits from the contract. In so asserting, Amtrak suggests that the

---

plaintiff.'"). In the pending motion, Amtrak makes no claim to assets or profits that are its property. Rather, Amtrak asserts it that it is entitled to Veolia's profits because those profits are attributable to the breach of duty that, according to the jury, Veolia aided and abetted. Both parties acknowledge that no such unjust enrichment claim remains in the case, and the court does not address this issue further as a result.

jury's additional finding that Veolia did not proximately cause Amtrak's failure to win the contract is of no moment. For several reasons, Amtrak is incorrect.

First, the jury's finding on causation closes the door to disgorgement. Although, by the Restatement, "it is not a condition of liability that, absent the disloyalty, [Amtrak] would either have won the contract or made a profit," *id.*, the jury's finding that Amtrak would *not* have won the contract *absent the breach* extinguishes Amtrak's entitlement to relief. In other words, the Restatement rule relieves the plaintiff of the *burden* of showing harm when it has been the victim of a disloyal agent's breach. However, when, as here, the factfinder determines that the defendant's profits would *never* have been enjoyed by the plaintiff, the rule does not compel disgorgement.[4] On the record of this case, the court determines, in its discretion, that Amtrak is not entitled to this remedy.

Second, contrary to Amtrak's assertion, harm from the breach cannot be presumed here as it is in cases dealing with disgorgement of the fees paid to disloyal attorneys. Unlike the plaintiffs in *Avianca v. Corriea*, 1992 WL 93128, at *12 (D.D.C. April 13, 1992), *Hendry*, 73 F.3d 397, and *Bode & Grenier, L.L.P. v. Knight*, 821 F. Supp. 2d 57, 65 (D.D.C. 2011), Amtrak is not a fee-paying client of Veolia. Although Amtrak paid the salaries of the three disloyal

---

[4]   Equally unavailing to Amtrak is the holding of the Florida Court of Appeals in *Phillips Chemical Company* v. *Morgan*, 440 So. 2d 1292 (Fla. Dist. Ct. App. 1983). In that case, the court required disgorgement of profits made by a company aider and abettor of a disloyal employee's kick-back scheme. The court applied § 312 of Restatement (Second) of Agency, which provides that "[a] person who, without being privileged to do so, intentionally causes or assists an agent to violate a duty to his principal is subject to liability to the principal" the *Phillips* court found that disgorgement of the kickback profits was appropriate. *Id.* at 1295. This holding, however, does not support Amtrak's prayer for relief, for the same reasons that § 43 of the Restatement (Second) of Restitution fails it. The *Phillips* plaintiff-employer indisputably lost profits as a result of the employee's disloyalty. *Id.* Not so here. Although Amtrak may have perceived a diminished value in the services its disloyal employees provided, this is not the harm for which Amtrak seeks recovery from Veolia. Rather, Amtrak seeks profits Veolia earned on the contract, even though, according to the jury, Amtrak would never have won that contract.

employees who breached their duty to Amtrak, this compensation amount is not sought in the present motion.[5] Therefore, the court agrees with Veolia that the holding of *Hendry* (the case upon Amtrak primarily relies) was not based upon a general principal that disgorgement can be awarded in the absence of causation, but rather upon the finding that causation is presumed as a matter of law where an attorney breaches his fiduciary duties to his client. In explaining why the plaintiff-client does not have to prove damages, the D.C. Circuit stated: "Unlike other forms of compensatory damages, however, forfeiture [of an attorney's fee] reflects not the harms clients suffer from the tainted representation, but the decreased value of the representation itself. Because a breach of the duty of loyalty diminishes the value of the attorney's representation as a matter of law, some degree of forfeiture is thus appropriate without further proof of injury." *Hendry*, 73 F.3d at 402 (citing *Gilchrist v. Perl*, 387 N.W.2d 412, 416–175 (Minn. 1986)). As well, the *Hendry* court established a narrow scope of inquiry: "Although we have found no District of Columbia cases precisely on point, courts in other jurisdictions have held that clients must prove injury and proximate causation in a fiduciary duty claim against their lawyer if they seek *compensatory damages,* not if, as here, they seek only *forfeiture of legal fees.*" *Id.* at 401 (emphasis in original).[6] Thus, although the Hendry court's rationale might support a claim of

---

[5] Veolia maintains that the only "loss" or damage Amtrak may recover against Veolia for aiding and abetting a breach of fiduciary duty is disgorgement of the profits of the primary tortfeasor – i.e., the employee's salary during the period of disloyalty.

[6] Amtrak points to another example from the Restatement (Third) of Restitution which that "a trustee who makes a profit from the personal use of trust assets could not escape liability in restitution by proving that he could have (and would have) made the same profit legitimately, supposing that his access to the trust assets had been hindered in some way.'" Restatement (Third) of Restitution § 51, cmt. f. Citing this example, Amtrak argues that even if Veolia could show that it could have obtained the contract by other means, it is not exonerated for its misconduct and entitled to enjoy the rewards of its transgression. This argument misses the mark. Veolia is not arguing that disgorgement is improper because it could have won the contract without aiding and abetting the employees' breach of their duty to Amtrak. Rather, it

disgorgement of a disloyal employee's salary on the grounds that the value of her services during a period of disloyalty are reduced *as a matter of law*, it is not applicable to Veolia here. *See In re Randolph-Bray*, 942 A.2d 1142, 1147 (D.C. 2008) ("But *Hendry* is inapposite for a number of reasons, perhaps the most significant being that Arnold earned no fees for her service as fiduciary that she could be required to forfeit").

Moreover, unlike the plaintiffs in the above cases, Amtrak was not a fee-paying client of Veolia. No shattered fiduciary relationship between Veolia and Amtrak requires the court's protection. Therefore, any compelling reasons for sanctioning disloyal employees and thereby "enforce[ing] by prophylaxis the special duties of the fiduciary" and "protecting the reliance of the beneficiary on the fiduciary's disinterested conduct" do not militate in favor of a remedy here. Restatement (Third) of Restitution § 43. Indeed, Amtrak does not seek disgorgement that would deter disloyal conduct. An award of Veolia's profits to Amtrak in no way impacts the three disloyal employees; their incentives to breach in the future would remain exactly the same if Amtrak were to prevail in this action. Indeed, Amtrak's expressed concern for such deterrence rings hollow in light of the fact it *rehired* one of these disloyal employees and promoted him to higher paying position *after he breached his duty to Amtrak*.

Third, without some measure of harm to Amtrak that is linked to Veolia's profits, the disgorgement that Amtrak seeks sounds in punishment rather than restitution. The purpose of disgorgement is remedial, rather than punitive. *Griffith v. Barnes*, 560 F. Supp. 2d 29, 35 (D.D.C. 2008), and it "is meant to provide just compensation for the wrong, not to impose a penalty; it is given in accordance with the principles governing equity jurisdiction, not to inflict

---

convincingly claims that Amtrak cannot be entitled to disgorgement of its profits when Amtrak would not have won the contract in any event and when Veolia's profits are attributable to many other factors, beyond those related to the breach and the disloyal employees.

7

punishment but to prevent an unjust enrichment." *Estate of Corriea*, 719 A.2d 1234, 1240 (D.C. 1998); *Cf. SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1231 (D.C. Cir. 1989).  When "liability for the profits so designated would be unacceptably punitive, being unnecessary to accomplish the object of the disgorgement remedy in restitution," courts may deny disgorgement, even if some level of attribution exists.  Restatement (Third) of Restitution § 51.  The court finds as much here.  On the facts established at trial, disgorgement would be unacceptably punitive because no compensatory damages are warranted, by the finding of the jury, and any future breach could be deterred with a much less radical award.  "[D]isgorgement is an extraordinary remedy, and if it is ever appropriate, it should be used only in situations where the deterrence rationale is so important that only disgorgement will serve a socially useful purpose."  (citing *In Re Eastern Sugar Antitrust Litigation*, 697 F.2d 525, 533 (3rd Cir. 1982) (reserving such extreme sanctions for misconduct "so egregious that the need for attorney discipline and deterrence of future improprieties of that type" is great)).  The court does not conclude that this is such a case.

**B.     Veolia's Profits Are Not Attributable to the Breach Because They Are Too Remote**

Even if entitlement to disgorgement were proper notwithstanding the jury's verdict as to proximate causation, the court does not find that Amtrak has met the standard for causation that that rule establishes—namely, that the profits which plaintiff seeks to disgorge be "attributable to" the breach.  Restatement (Third) of Restitution§ 51.  Amtrak claims that "the whole of [Veolia's] Tri-Rail profits are both attributable and causally related to its intentional wrongdoing."  Pl.'s Rep at 7.  Veolia counters that Amtrak has not proven that Veolia's profits are linked in any way to the breach and that even if there were some evidence, Veolia's profits are in fact "attributable to" a raft of other, more substantial factors.  Once again, Veolia has the better argument.

The award of disgorgement to rests on "an implicit judgment that the claimant, rather than the wrongdoer, should . . . obtain the benefit of the favorable market conditions, acumen, or luck, as the case may be." Restatement (Third) of Restitution § 51. When a court finds the profits are "the product of legitimate contributions by the defendant that should not, in justice, be awarded to the claimant," it may deny them as "too remote" to warrant disgorgement.[7] *Id.* Such conditions exist here.

First, although the court declines to dissect Veolia's books, it finds persuasive Veolia's argument that its profits are the result of a wide range of factors that outweigh the contributions of the three disloyal employees. While Veolia may not have won the contract during the bidding round at issue without the participation of the three disloyal Amtrak employees, it does not follow that Amtrak is entitled to *all* the profits Veolia has earned on the contract. Thus, the court disagrees with Amtrak that "[i]t is beyond serious dispute that all of Veolia's profits on the Tri-Rail contract are attributable to its tortious conduct." Pl.'s Mot. at 4. The dispute is, in fact, serious and valid.

The reasoning of the Delaware Chancery court in *Triton Const. Co., Inc. v. Eastern Shore Elec. Services, Inc.*, supports Veolia's argument against disgorgement. 2009 WL 1387115 (Del. Ch. May 18, 2009). In that case, the court awarded a plaintiff company the disgorged salaries of the disloyal employee where the employee breached his fiduciary duties while working for plaintiff and assisting plaintiff's competitor in preparing bids. However, the court found that

---

[7] While the *First City Financial* court's holding on disgorgement is confined to the securities law context, the court noted in relevant *dicta* that "in a private action, the party seeking monetary compensation may have a greater burden to prove its claim to the amount requested." 890 F.2d at 1232 n.24. Regardless of the level of certainty required in calculating the amount, it is clear in this Circuit that a party seeking disgorgement must prove that the defendants' profits were "causally connected to the violation" at some level—and certainly not have been found to have *no connection* as the jury found here. *Id.*

even though the defendant was liable for aiding and abetting the employees' breach, disgorgement of the defendant's profits was not appropriate when the plaintiff could not prove that it would have earned profits on certain projects but for employee and defendant company's conduct. *See Triton*, 2009 WL 1387115, at *29.[8] In denying the plaintiff's claim of entitlement to defendant's profits, the court reasoned that the plaintiff "has not proved that [the disloyal employee's] involvement contributed significantly to [the aider and abettor's] acquisition of those profits."[9] *Id.* at *29. The same rationale applies here. Amtrak has not shown that the profits that Veolia has earned are attributable to the breach.[10]

Second, and more fundamentally, Amtrak should not be awarded profits earned on a contract that it would not have won. As Veolia argues, equitable relief should not put Amtrak in a better position than it would have been in the absence of any wrongdoing. Therefore, the court concludes that it would not be just to disgorge all of the profits that Veolia has made since it

---

[8]   The *Triton* court did award plaintiff the profits made by the defendant on two projects because those earning were the best measure of damages for the tortious interference of contract claim. *Triton*, 2009 WL 1387115, at *28. Because Amtrak makes no tortious interference claim here, the *Triton* court's remedy for that tort is inapposite to the case at bar.

[9]   This conclusion corresponds with the *Design Innovation* court's observation that "the [older] cases . . . cited . . . for the proposition that a wrongdoer should be disgorged of its profits have been superseded by contemporary cases concluding that disgorgement is an appropriate remedy only when a defendant's profits are a reasonable proxy for a plaintiff's lost profits." *Design Innovation, Inc. v. Fisher-Price, Inc.*, 463 F. Supp. 2d 177, 182 (D. Conn. 2006); *see also Hertz Corp. v. Avis, Inc.*, 485 N.Y.S.2d 51, 54 (N.Y. App. Div. 1985) ("[A]n accounting for profits is based upon the assumption and showing that the defendant has . . . unfairly competed in some way as to pre-empt business which would otherwise have gone to plaintiff.").

[10]   To the extent that Amtrak seeks relief in equity, the court declines to grant such a remedy for the reasons stated above—namely, that it would be unjust and that it does not serve a compelling social interest. In reaching this conclusion, the court rejects Veolia's call to "safeguard society's interest in fostering free and vigorous competition in the economic sphere," and its characterization of disgorgement as a "contractual death penalty." Def.'s Opp.'n at 12, 13. These assertions are overstated and inapposite to the court's disposition of the motion at issue. This case has nothing to do with preserving any particular economic sphere or a foreshadowed death of contract. It is about the law as applied to the facts of this case.

began performing on the contract.  *See Avianca*, 1992 WL 93128, at *12.  For this reason, among the others detailed above, disgorgement is not warranted.[11]

### III. CONCLUSION

For the foregoing reasons, the court concludes that [Dkt. # 196] Amtrak's motion for a judgment of disgorgement must be denied.[12]

An appropriate order accompanies this opinion.

So ordered.  August 21, 2012.

*[signature: Barbara J. Rothstein]*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

[11]  The cases that Amtrak cites to the contrary do not save its claim.  In *Phillips*, the profits were directly related to the kick-back scheme.  As well, in *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556 (4th Cir. 1990), the court was careful to limit its detailed deterrence rationale to the noncircumvention agreement context and awarded a constructive trust because money damages were too speculative.  These circumstances do not exist here, and Amtrak does not argue as much.  Moreover, in *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086–87 (9th Cir. 2003), the Ninth Circuit found that an award of disgorged profits was appropriate because the profits made by disloyal employees were a *result* of their breech.  As detailed above, there is no such connection here between Veolia's profits and the amounts earned by the three disloyal employees.  The jury made no finding as to this matter, and the court declines to reach a contrary conclusion.

[12]  Because the court finds that Amtrak is not entitled to any disgorgement as a legal remedy it does not examine the plaintiff's arguments as to the management fee and the constructive trust.  As well, a hearing on the evidence is not required, and [Dkt. ## 201, 206] Veolia's request for such a hearing is denied as moot.